Jason S. Brookner
State Bar No. 24033684
Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:     (214) 659-4400
Facsimile:     (214) 659-4401

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH-11 |
| GROUP LLC, *et al.*, | § | |
| | § | Joint Administration Pending |
| Debtors. | § | |

## DEBTORS' MOTION (i) FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING AND APPROVING (1) DEBTOR IN POSSESSION FINANCING PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(c), (2) THE USE OF CASH COLLATERAL AND THE GRANT OF ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) AND (3) MODIFICATION OF THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE AND (ii) SCHEDULING A FINAL HEARING AND <u>APPROVING FORM AND MANNER OF NOTICE THEREOF</u>

BroadStar Wind Systems Group LLC and its affiliated debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"),[1] for

their Motion (the "<u>Motion</u>") (i) for Interim and Final Orders (A) Authorizing and Approving

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are:  BroadStar Wind Systems Group LLC ("BWSG") (2489), Broadstar Wind Systems Management LLC ("BWSM") (8805), Broadstar Wind Systems LP ("BWS") (8806), BroadStar Developments Management LLC ("BDM") (8582), BroadStar Developments LP ("BD") (8597).  The Debtors' corporate headquarters are located at 1323 North Stemmons Freeway, Dallas, Texas 75207.

MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 1

DAL:766011.4

(1) Debtor in Possession Financing Pursuant to Sections 364(c) and 364(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (2) the Use of Cash Collateral and the Grant of Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (3) Modification of the Automatic Stay Under Section 362 of the Bankruptcy Code, and (ii) Scheduling a Final Hearing and Approving Form and Manner of Notice Thereof, respectfully represent:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

## INTRODUCTION

3.      On May 11, 2010 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code.

4.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession.  Concurrently with the filing of this Motion, the Debtors have requested that their cases be jointly administered.

5.      No official committee, trustee or examiner has been appointed.

## BACKGROUND

**A.      <u>The Business</u>**

6.      The Debtors develop wind turbine technology and, pending resolution of litigation regarding certain intellectual property, will manufacture and deploy wind turbines into the market. The Debtors currently employ nineteen employees and contractors and are headquartered in Dallas, Texas. Additional information concerning the Debtors, their capital and

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 2**

DAL:766011.4

debt structure, and the events leading up to the commencement of these chapter 11 cases is contained in the Declaration of Roy C. King In Support of Chapter 11 Petitions and First Day Motions (the "<u>King Declaration</u>"), filed simultaneously herewith.

**B.      Prepetition Creditors Financing Arrangements**

7.      Prior to the Petition Date, the Debtors financed their operations through equity contributions and borrowings pursuant to the Rights Offering under a series of Secured Promissory Notes (as modified, amended or supplemented from time to time prior to the Petition Date, the "<u>Prepetition Credit Documents</u>"), among BWSG as borrower, and the other Debtors as guarantors, and from BICO and BELP (the "<u>Prepetition Lenders</u>").

8.      As of the Petition Date, the Debtors owed the Prepetition Lenders approximately $2.08 million (including accrued but unpaid interest) (the "<u>Prepetition Secured Debt</u>") under the Prepetition Credit Documents.   The Prepetition Secured Debt is secured by a lien on substantially all of the Debtors' assets, including their membership interests in the subsidiary entities (the "<u>Prepetition Collateral</u>").

9.      The Debtors are in default under the Prepetition Credit Documents.

<div align="center"><u>**RELIEF REQUESTED**</u></div>

10.      By this Motion, the Debtors respectfully request entry of (i) an interim order (the "<u>Interim DIP Order</u>"), substantially in the form attached hereto as <u>Exhibit "A"</u> and a final order (the "<u>Final DIP Order,</u>" and together with the Interim DIP Order, the "<u>DIP Orders</u>")[2] (i) authorizing the Debtors to (a) obtain the DIP Financing (defined below) and (b) use the cash

---

[2]      The form of Final DIP Order will be filed with the Court and made available to parties in interest five (5) business days prior to the Final Hearing.

collateral of the Prepetition Lenders, and (ii) granting adequate protection to the Prepetition Lenders, on the terms set forth below and herein:[3]

- authorizing and approving borrowing up to $1,500,000, with availability of $500,000 being subject to satisfaction of a condition precedent (the "DIP Financing"):

  (i)    pursuant to section 364(c)(1) of the Bankruptcy Code, providing superpriority claim status to the DIP Lenders, with such superpriority to be junior in priority to the Carve Out (defined below) but senior to any superpriority claims granted to the Debtors' Prepetition Lenders;

  (ii)   pursuant to section 364(c)(2) of the Bankruptcy Code, secured by a perfected first priority lien on all of the Debtors' property that is not subject to previously perfected, valid and non-avoidable liens in existence on the Petition Date (or valid liens in existence as of the Petition Date that are subsequently perfected pursuant to section 546(b) of the Bankruptcy Code); and

  (iii)  pursuant to section 364(d)(1) of the Bankruptcy Code, secured by a perfected priming lien on, and security interest in, all of the Debtors' existing and after acquired property that is subject to valid, perfected and non-avoidable liens in existence as of the Petition Date to secure the Prepetition Secured Debt and all present and after acquired property that is presently subject to other junior liens;

- authorizing and approving the Debtors' use of the Prepetition Lenders' cash collateral ("Cash Collateral"), pursuant to section 363(c)(2) of the Bankruptcy Code and providing to the Prepetition Lenders, under sections 361 and 363(e) of the Bankruptcy Code, adequate protection for the use of such Cash Collateral in the form of replacement liens and superpriority claims to the extent of any diminution of value of such collateral (all as set forth more fully herein and in the DIP Orders);

- modifying the automatic stay under section 362(d) to permit the implementation of the terms and conditions of the DIP Orders and the granting and perfection of the liens and superpriority claims contemplated thereby; and

- scheduling a final hearing on the Motion in accordance with the time frames established by Bankruptcy Rule 4001(c) (the "Final Hearing") and approving

---

[3]     In addition to the matters expressly set forth herein, the Debtors also request that the Court authorize and approve other customary terms typically approved in connection with DIP financing and cash collateral matters, as more fully set forth in the Interim DIP Order.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 4**

DAL:766011.4

the form and manner of notice to parties in interest of the Final Hearing and the Final DIP Order.

11.    For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) after the occurrence and during the continuance of an Event of Default, the payment of accrued and unpaid professional fees and expenses incurred by the Debtors and the Committee and allowed by the Court, in an aggregate amount not exceeding $100,000 (plus all unpaid professional fees and expenses allowed by this Court that were incurred prior to the occurrence of such Event of Default); *provided, however,* that (A) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lender or the Prepetition Lenders, (B) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by the Bankruptcy Court and payable under sections 330 and 331 of the Bankruptcy Code and (C) nothing shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

## THE PROPOSED FINANCING

12.    Prior to the Petition Date, the Debtors contacted several sources of potential funding and none were willing to provide a DIP loan that was junior to the Prepetition Secured Debt.  Thus, despite their prepetition their efforts, the Debtors have been unable to (a) procure sufficient financing (i) in the form of unsecured credit allowable under section 503(b)(1), (ii) as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, (iii) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1) of the

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 5**

DAL:766011.4

Bankruptcy Code, (iv) without granting priming liens with respect to the Prepetition Lenders pursuant to section 364(d) of the Bankruptcy Code, or (b) obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than the proposed DIP Financing.

13.     In exploring the Debtors' options, the Debtors recognized that the Prepetition Lenders are secured by first liens on substantially all of the Debtors' assets such that (i) its liens would have to be primed by any liens securing the DIP Financing or (ii) the Debtors would have to find a postpetition lender willing to extend credit junior to the Prepetition Lenders' liens.  The Debtors were unable to solicit any proposals for a DIP loan junior to the Prepetition Secured Debt, and the Debtors were advised by the Prepetition Lenders that it would not consent to being primed by another lender.

14.     The Debtors and the DIP Lender engaged in arms' length negotiations with respect to the terms of the proposed DIP Financing.  Based upon the facts and circumstances of these chapter 11 cases, as well as the Debtors' sound business judgment, the Debtors have determined that financing on the terms and conditions set forth herein and in the credit agreement attached hereto as Exhibit "B" (the "DIP Credit Agreement") are the most favorable available to the Debtors under the circumstances.

15.     The Debtors have an immediate need to obtain the DIP Financing and use Cash Collateral in order to allow the business to continue uninterrupted, preserve their going concern value, make payroll and satisfy other working capital and general corporate needs.

16.     The salient provisions of the DIP Financing, as set forth in the DIP Credit Agreement, are as follows:

Borrower:                    BroadStar Wind Systems Group LLC.

Guarantors:                  BroadStar Wind Systems Management LLC, BroadStar Wind

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 6**

DAL:766011.4

Systems LP, BroadStar Developments Management LLC and BroadStar Developments LP (collectively, the "Guarantors", and together with the Borrower, the "Loan Parties").

| | |
|---|---|
| Lender: | BroadStar Investment Company LLC (the "DIP Lender"). |

**Revolving Loan Commitment and Availability:**

A six-month revolving loan facility (the "DIP Facility") in the amount of $1,000,000, with an automatic increase to $1,500,000 at the earlier of such time as (i) all disputes pending on the Closing Date regarding certain confidential and proprietary data or information of the Loan Parties relating to their Wind Systems' wind turbine technology business are resolved in favor of the Loan Parties, as reasonably determined by the DIP Lender or (ii) the DIP Lender otherwise agrees (the loans thereunder, the "DIP Loans"). The DIP Loans shall be repaid on the earlier to occur of (x) the six (6) month anniversary of the DIP Closing Date referred to below (as may be extended pursuant to the terms set forth below, the "DIP Maturity Date"), and (y) the consummation of a chapter 11 plan for the Debtors (a "Plan").

The DIP Loans shall be made in minimum drawings of $100,000 from time to time as requested by Borrower, subject to terms and conditions set forth in the DIP Credit Agreement.

**Purpose:**

The proceeds of the DIP Loans shall be used for working capital and other general corporate purposes of the Loan Parties in accordance with the DIP Budget.

**Interest Rate:** 9%.

**Origination Fee:** 5% of the revolving loan commitment amount.

**Priority and Liens:**

All DIP Loans and other obligations under the DIP Facility (and all guaranties of the foregoing by the Guarantors), shall at all times:

- pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority claim status in the chapter 11 cases with such superpriority claims to be senior to any superpriority claims granted to the Debtors' Prepetition Lenders;

- pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a perfected first priority lien on all property of the Debtors' respective estates in the chapter 11 cases that is not subject to valid, perfected and non-avoidable liens in existence at the time of the commencement of the cases or to valid liens in existence at the time of such

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 7**

DAL:766011.4

commencement that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code; and

- pursuant to section 364(d)(1) of the Bankruptcy Code, be secured by a perfected priming lien on, and security interest in, all present and after acquired property of the Debtors' respective estates that is subject to a valid, perfected and non-avoidable liens in existence at the time of the commencement of the cases to secure the Prepetition Secured Debt and all present and after-acquired assets that are presently subject to liens that are junior to the liens that secure the Prepetition Secured Debt.

**Optional and Mandatory Prepayments:**

Borrower may prepay any DIP Loans at any time in whole or in part. Upon and during the continuance of an Event of Default, the DIP Lender has the right to accelerate and demand payment of all DIP Loans then-outstanding.

**Conditions to Initial of Extensions Credit:**

Market terms for financings of this type, including (the date on which all such conditions precedent shall be satisfied, the "DIP Closing Date"):

a.  The Interim DIP Order, in form and substance reasonably satisfactory to the DIP Lender, shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not be subject to any stay.

b.  The automatic stay shall have been modified to implement the terms of DIP Facility and to allow the Loan Parties to create, and the DIP Lender to perfect, any and all liens, mortgagees and security interests granted to it under any of the Loan Documents. In addition, any Interim DIP Order or Final DIP Order then in effect shall contain such terms for vacating the automatic stay to permit enforcement of the DIP Lender's rights and remedies under the DIP loan documents as the DIP Lender may agree to in its sole discretion.

c.  The accuracy in all material respects of all representations and warranties in the DIP Credit Agreement.

d.  There being no default or event of default in existence at the time of, or after giving effect to the making of, such extension of credit.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 8**

DAL:766011.4

e. No Bankruptcy Court order is entered (i) authorizing any Loan Party to obtain financing or credit pursuant to section 364 of the Bankruptcy Code from any person other than the DIP Lender secured by a security interest or administrative claim unless such security interest and administrative claim are junior to the DIP Lender's superpriority lien and superpriority claim, as the case may be; or (ii) providing adequate protection to any person under sections 361 through 364 of the Bankruptcy Code by granting a security interest in any of the collateral or an administrative claim unless such security interest or administrative claim is junior to the superpriority lien and superpriority claim of the DIP Lender.

f. No event or circumstance shall have occurred that could reasonably be expected to have a material adverse effect, as reasonably determined by the DIP Lender.

**Adequate Protection**

Superpriority claims and replacement liens, which shall be junior to the claims and liens granted to the DIP Lender.

**Events of Default:**

a. Default in the payment of principal or interest on any of the Obligations when due and payable.

b. Default in the payment of any fees, commissions, costs or expenses required to be paid by the Borrower under the DIP Credit Agreement or in the payment of any other Obligations when due and payable.

c. Default in the performance, or breach, of any covenant or agreement of a Loan Party contained in any DIP loan document.

d. Entry of an order of the Bankruptcy Court modifying, amending, reversing, vacating, or staying either the Interim Order or the Final DIP Order, or any Loan Party's violation of any of the terms of the Interim DIP Order or the Final DIP Order.

e. In connection with chapter 11 cases: (i) the Bankruptcy Court shall enter an order dismissing the chapter 11 cases; (ii) the chapter 11 cases shall be converted to cases under chapter 7 of the Bankruptcy Code; (iii) a trustee or an examiner with expanded powers shall be appointed in the chapter 11 cases; (iv) a motion shall be filed for, or there shall arise, any claim (other than those of the DIP Lender hereunder) in the chapter 11 cases having a priority under section 364(c)(1) of the Bankruptcy Code unless such

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 9**

DAL:766011.4

motion provides for the payment in full in cash of the Obligations upon the closing of such financing; (v) a motion shall be filed for, or there shall arise, a claim (other than those of the DIP Lender) in the chapter 11 cases secured by a lien having a priority under section 364(d) of the Bankruptcy Code unless such motion provides for payment in full in cash of the Obligations upon the closing of such financing; (vi) there shall arise any lien (other than an allowable lien) in the collateral or any part thereof; (vii) the Bankruptcy Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder of any security interest other than the DIP Lender; or (viii) the Bankruptcy Court shall enter an order approving a disclosure statement in connection with a chapter 11 Plan proposed by any Loan Party or any other person which Plan is inconsistent with such Loan Party's agreements and obligations under the DIP loan documents.

f.  Any Loan Party shall fail to pay, withhold, collect or remit any tax or tax deficiency when assessed or due or notice of any state or federal tax liens shall be filed or issued, where such payment is required under applicable bankruptcy law.

g.  Any event or circumstance with respect to a Loan Party shall occur such that the DIP Lender shall determine in good faith that the prospect of payment of all or any part of the Obligations or the performance by the Loan Parties, taken as a whole, under the DIP loan documents is impaired or any material adverse effect shall occur.

h.  Any representation or warranty made or deemed made by a Loan Party shall prove to have been incorrect in any material respect on or as of the date made or deemed made.

i.  Excluding defaults which occurred on or prior to the commencement of the chapter 11 cases, a Loan Party shall (i) default in any payment of principal of or interest of any debt beyond the period of grace (not to exceed 30 days), if any, provided in the instrument or agreement under which such debt was created, if the aggregate amount of the debt in respect of which such default or defaults shall have occurred is at least $50,000; or (ii) default in the observance or performance of any other agreement or condition relating to any such debt or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition exist,

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 10**

DAL:766011.4

the effect of which default or other event or condition is to cause, or to permit the holder or holders of such debt to cause, with the giving of notice if required, such debt to become due prior to its stated maturity, and in each case the consequences of such defaults shall not be stayed by the chapter 11 cases.

j.     One or more judgments or decrees shall be entered against a Loan Party involving in the aggregate a liability (not paid or fully covered by insurance) of $50,000 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 60 days from the entry thereof or shall not otherwise be stayed by the chapter 11 cases.

k.     Any of the security documents shall cease, for any reason, to be in full force and effect, or a Loan Party shall so assert or the security interest or any other lien created by any of the security documents shall cease to be enforceable and of the same effect and priority purported to be created thereby.

l.     Any Loan Party fails to comply with the Interim DIP Order or the Final DIP Order.

m.     The Final DIP Order is not entered within 20 days after the Petition Date or such later date as the DIP Lender may agree in its sole discretion.

**Representations and Warranties; Covenants; Assignments**

Market terms for financings of this type, including:

a.     Representations and warranties relating to organization, subsidiaries, Federal Reserve Board regulations, information provided to the DIP Lender, inventory, receivables, ownership of collateral, intellectual property, validity of liens, no defaults, taxes, compliance with laws, existing indebtedness, litigation and administrative priority.

b.     Covenants, subject to customary exceptions, relating to reporting requirements, maintaining books and records, verifying accounts, complying with laws, complying with agreements, paying taxes and other claims, maintaining properties, insurance, preserving existence, delivering documents, the cash collateral account, the Final DIP Order, operating within the DIP Budget, not incurring liens, not incurring indebtedness, not permitting guarantees, not permitting investments, not permitting

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 11**

DAL:766011.4

defaults, not paying excessive salaries, not amending organizational documents, not selling assets, not entering into affiliate transactions, not making certain payments and not changing the nature of the business.

c.  No Loan Party can assign its rights and obligations under the DIP Credit Agreement without the consent of the DIP Lender.

Expenses; Indemnification:    Each Loan Party agrees to reimburse and indemnify the DIP Lender for all of its out-of-pocket costs and expenses incurred in connection with the development, preparation and enforcement of the Loan Documents.

Governing Law:    State of New York, except as governed by the Bankruptcy Code.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 12**

DAL:766011.4

17.     The matters described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi) are set forth in the following sections of the DIP Credit Agreement and the proposed form of Interim DIP Order:

(a)     ***Grant of Priority or a Lien on Property of the Estate.***  Interim DIP Order ¶¶6 and 7; DIP Credit Agreement Article III.

(b)     ***Adequate Protection or Priority for a Claim that Arose Before the Commencement of the Case.***  Interim DIP Order ¶13; DIP Credit Agreement Article III.

(c)     ***Determination of the Validity, Enforceability, Priority, or Amount of a Claim that Arose Before the Commencement of the Case.*** Interim DIP Order ¶3.

(d)     ***Waiver or Modification of the Automatic Stay.***  Interim DIP Order ¶8.

(e)     ***Waiver or Modification of Authority to File a Plan, Seek an Extension of Time in which the Debtor has the Exclusive Right to File a Plan, Request Use of Cash Collateral, or Request Authority to Obtain Credit.***  N/A

(f)     ***Establishment of Deadlines for Filing a Plan, for Approval of a Disclosure Statement, for a Hearing on Confirmation, or for Entry of a Confirmation Order.***  N/A

(g)     ***Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection of a Lien on Property of the Estate, or on the Foreclosure or Other Enforcement of the Lien.***  Interim DIP Order ¶15.

(h)     ***Release, Waiver, or Limitation on any Claim or Cause of Action Belonging to the Estate.***  Interim DIP Order ¶¶3(c) and 17.

(i)     ***Indemnification of Any Entity.***  N/A

(j)     ***Release, Waiver or Limitation on Rights Under 11 U.S.C. § 506(c).***  Interim DIP Order ¶9 (subject to entry of the Final DIP Order).

(k)     ***Liens Granted on Claims Arising Under Chapter 5.***  N/A

18.     The terms and conditions of the DIP Financing have been negotiated at arms' length and in good faith by the Debtors and the DIP Lender.  The Debtors submit that the terms and conditions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the necessary funding.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 13**

DAL:766011.4

19.     With respect to the request to use the Cash Collateral, the matters described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) are set forth at the following sections of the Interim DIP Order:

(a)     ***Name of Each Entity with Interest in the Cash Collateral.***  Interim DIP Order ¶10.

(b)     ***Purposes and Use of Cash Collateral***.  Interim DIP Order ¶11.

(c)     ***Material Terms, Including Duration, of Use of Cash Collateral***.  Interim DIP Order ¶11.

(d)     ***Liens, Cash Payments, or Other Adequate Protection to Be Provided to Each Entity with Interest in Cash Collateral.***  Interim DIP Order ¶12.

## AUTHORITY

### A.     The DIP Facility Should Be Authorized

20.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364(c).  Section 364(d) of the Bankruptcy Code allows a debtor to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien, provided that (i) the debtor is unable to obtain such credit otherwise, and (ii) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.  11 U.S.C. § 364(d).

21.     As discussed above, despite their efforts, the Debtors have been unable to (a) procure sufficient financing (i) in the form of unsecured credit allowable under section

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 14**

DAL:766011.4

503(b)(1), (ii) as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, (iii) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, (iv) without senior priming liens on the Prepetition Collateral, pursuant to section 364(d) of the Bankruptcy Code, or (b) obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than the proposed DIP Financing. Therefore, the Debtors propose to obtain the financing set forth herein and in the DIP Credit Agreement by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to sections 364(c)(1), (2) and (d) of the Bankruptcy Code, with such claims, security interests and liens to be senior to those held by the Prepetition Lenders, all as set forth more fully herein and in the DIP Credit Agreement.

22.     Having determined that financing is available only under sections 364(c) and (d) of the Bankruptcy Code, the Debtors negotiated the DIP Credit Agreement with the DIP Lender at arms' length. Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, a debtor should be granted considerable deference in acting in accordance therewith. *See, e.g., In re Breechgrove Redevelopment, L.L.C.*, Nos. 07-12057 and 12058, 2007 WL 4414777, at *1-2 (Bankr. E.D. La. Dec. 13, 2007) (holding that post-petition loan documents were fair and reasonable, reflecting debtors' exercise of prudent business judgment); *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re U.S. Mineral Products Co.*, No. 01-2471 (JKF), 2005 WL 5887218, at *4 (Bankr. D. Del. Nov. 29, 2005) (finding that the post-petition loan documents and terms of the exit loan facility reflected the trustee's exercise of prudent business judgment consistent with his fiduciary duties); *In re Trans World Airlines, Inc.*, No. 01-00056

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 15**

DAL:766011.4

(PJW), 2001 WL 1820326, at *10-11 (Bankr. D. Del. Apr. 2, 2001) (rejecting a financing proposal of a bidder for the debtor's assets, finding it improper to substitute the court's judgment for the debtor's and noting that, in any event, the debtor had previously considered a DIP financing alternative and in the exercise of its business judgment, rejected it as a solution to its financial crisis); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

23.     Furthermore, section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien.  *Beechgrove*, 2007 WL 4414777, at *1 (holding that debtors adequately satisfied requirement that they were not able to obtain financing without the need to grant a senior lien); *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most lend money only in return for a senior secured position"); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (debtor adequately established that some degree of priming loan was necessary if debtor were to obtain funding).

24.     Here, as previously stated, the Debtors contacted several sources of potential funding and none were willing to provide a DIP loan that was junior to the Prepetition Lenders.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 16**

DAL:766011.4

As set forth above, the priorities granted to the DIP Lender will be senior to the Prepetition Lenders, and the DIP Lender was the only sources of funding willing to provide DIP Financing on this basis.

25.     A debtor may borrow money under section 364(d)(1) of the Bankruptcy Code if the debtor meets its burden of establishing that the holder of the lien to be subordinated is adequately protected.  *In re First South Savings Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (finding that super-priority financing under 364(d) was appropriate because prepetition lender was adequately protected); *RTC v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (noting that section 364(d)(1) of the Bankruptcy Code provides that a bankruptcy court can authorize DIP financing supported by a superpriority lien only if the secured creditor who is to be primed is adequately protected, and that the burden to establish adequate protection falls on the debtor); *see also, e.g., Aqua Assocs.*, 123 B.R. at 196 (noting that section 364(d)(1)(B) requires the movant to prove that the lender who is subject to being primed will be adequately protected in the face of the loan transaction). The debtor also has the burden of demonstrating that (i) the credit transaction is necessary to preserve the estate and (ii) the terms of the transaction are fair and reasonable given the circumstances.  *Id.*

26.     Substantially all of the Debtors' assets are encumbered and, despite the diligent efforts of the Debtors, the Debtors have been unable to procure the required funding absent the grant of the proposed superpriority claims and priming liens.  The Debtors have negotiated the best terms available to obtain funding they need to maintain sufficient liquidity to preserve their assets over the course of their chapter 11 cases and reach Plan confirmation.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 17**

DAL:766011.4

27.     The terms and conditions of the DIP Credit Agreement are fair and reasonable, and were negotiated by well-represented, independent parties in good faith and at arms' length. The Debtors believe that the adequate protection and replacement liens provided to the Prepetition Lenders are appropriate, especially given that the majority Prepetition Lender is also the DIP Lender and has agreed to the terms set forth herein.

28.     The ability of the Debtors to continue to operate their businesses, preserve their enterprise value and reorganize under chapter 11 depends upon their ability to obtain the DIP Financing.  As a result, the Debtors respectfully submit that the proposed DIP Financing is a proper exercise of their sound business judgment, is in the best interests of the Debtors and their respective estates, creditors, and equity interest holders, and that the financing on the terms provided in the DIP Credit Agreement should be approved in all respects.

**B.      The Use of Cash Collateral Should Be Approved**

29.     Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  The Debtors require the use of the Cash Collateral to fund their day-to-day operations.  Indeed, absent such relief, the Debtors' business will be brought to an immediate halt, with damaging consequences for the Debtors and their estates and creditors.  The interests of the Prepetition Lenders in the Debtors' Cash Collateral will be protected by the adequate protection set forth below, to which the majority Prepetition Lender has agreed.

**C.      The Proposed Adequate Protection Should be Authorized**

30.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 18**

DAL:766011.4

court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code sets forth the forms of adequate protection which may be provided, which include periodic cash payments, additional liens, replacement liens and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis, though the Fifth Circuit has set forth certain criteria that should be considered including "the value of the collateral . . . the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is adequate, whether property taxes are being paid, and the prospects for the successful reorganization of the debtor's affairs." *In re Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997); *In re Las Torres Development L.L.C,* 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009); *see also MNBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 554 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

31.     As noted above, as adequate protection for its interests, the Debtors propose to provide the following adequate protection to the Prepetition Lenders, to the extent of any diminution in the value of its collateral:

- superpriority claims and replacement liens, pursuant to sections 361(2), 363(c)(2), 364(d)(1), 503(b)(1), 507(a)(2) and 507(b) of the Bankruptcy Code with such (a) superpriority claims to be senior to all other postpetition superpriority claims except the superpriority claims granted to the DIP Lender and (b) replacement liens on all property now owed or hereafter acquired by

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 19**

DAL:766011.4

the Debtors, whether or not subject to any other liens, with such liens to be subordinate only to the liens of the DIP Lenders.

32.     Without access to the proposed DIP Facility and use of the Cash Collateral, the Debtors' liquidity will quickly dry up, harming operations and the value of the business.  In contrast, the value of the Prepetition Lenders' interest in its collateral is preserved, if not increased, by the DIP Financing and use of Cash Collateral because it ensures the uninterrupted continuance of the Debtors' operations which will generate cash and preserve the Debtors' enterprise value.

33.     The Debtors believe, and respectfully submit, that replacement liens, superpriority claims and other protections offered to the Prepetition Lenders as adequate protection will, when taken together, sufficiently protect its interests in the Prepetition Collateral.  Moreover, the Prepetition Lenders has agreed to the relief sought herein.  Accordingly, the proposed adequate protection is fair and reasonable and sufficient to satisfy the requirement of Bankruptcy Code sections 363(c)(2) and (e) and 364(d).

## D.     The Automatic Stay Should be Modified on a Limited Basis

34.     The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to (i) grant the security interests, liens, and superpriority claims described above and to allow the DIP Lender and the Debtors to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, and (ii) implement the terms of the proposed DIP Orders.

35.     Stay modifications of this kind are ordinary and standard features of postpetition DIP financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 20**

DAL:766011.4

### E.     **Interim Approval Should Be Granted**

36.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of post-petition credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

37.     Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtors request that the Court conduct an expedited preliminary hearing on this Motion and (a) authorize the Debtors to use Cash Collateral and borrow up to $1.5 million of DIP Financing on an interim basis, pending entry of the Final DIP Order, in order to (i) maintain and finance the ongoing operations of the Debtors, and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest and (b) schedule the Final Hearing.

38.     Absent authorization from the Court to use Cash Collateral and obtain secured credit as requested, on an interim basis pending the Final Hearing, the Debtors will be immediately and irreparably harmed. The use of Cash Collateral and availability of interim loans under the DIP Credit Agreement will provide necessary assurance to the Debtors' vendors, employees, and clients of the Debtors' ability to meet their near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtors' businesses, to the detriment of all parties in interest. Furthermore, the lack of interim borrowing ability would result in accelerated cash demands on the Debtors. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtors and facilitating their reorganization efforts.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 21**

DAL:766011.4

**E.** **Form and Manner of Notice of Final Hearing**

39.     The Debtors propose to, no later than three (3) business days following entry of the Interim DIP Order, file with the Court and cause to be served upon parties in interest and any statutory committee appointed in these chapter 11 cases notice of the Final Hearing and a copy of the Interim DIP Order, and apprising such parties that (i) copies of the DIP Credit Agreement will be made available upon request and (ii) the form of Final DIP Order will be filed with the Court and made available upon request five (5) business days prior to the Final Hearing.

## NOTICE

40.     Notice of this Motion shall be provided to (i) the office of the United States Trustee for the Northern District of Texas, (ii) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to the Prepetition Lenders and the DIP Lender (iv) all other parties, if any, known by the Debtors to hold a security interest in the Debtors' assets; and (v) all other parties requesting notice in these chapter 11 cases.  The Debtors respectfully submit that, due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, no other or further notice of this Motion is required.

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING**
**DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING**
**ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 22**

DAL:766011.4

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court (i) grant the relief requested herein and (ii) grant such other and further relief as may be just and proper.

Respectfully submitted this 11th day of May, 2010.

<div style="margin-left: 40%;">

**ANDREWS KURTH LLP**

By: /s/ Monica S. Blacker
    Jason S. Brookner
    Texas State Bar No. 24033684
    Monica S. Blacker
    Texas State Bar No. 00796534
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:   (214) 659-4401
Email:      jbrookner@akllp.com
           mblacker@akllp.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

</div>

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DIP FINANCING AND THE USE OF CASH COLLATERAL, PROVIDING
ADEQUATE PROTECTION AND SCHEDULING A FINAL HEARING -- Page 23**

DAL:766011.4

# EXHIBIT A

# INTERIM DIP FINANCING ORDER

**EXHIBIT B**

**DIP CREDIT AGREEMENT**