

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature: Harlin DeWayne Hale]*

Signed May 13, 2010　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373 |
| GROUP LLC, *et al.*, | § | |
| | § | Joint Administration Pending |
| Debtors. | § | |

**INTERIM ORDER (i) AUTHORIZING AND APPROVING (A) DEBTOR IN POSSESSION FINANCING PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(c), (B) THE USE OF PREPETITION LENDERS' CASH COLLATERAL AND THE GRANT OF ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) AND (C) MODIFICATION OF THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE AND (ii) SCHEDULING A FINAL HEARING AND APPROVING FORM AND MANNER OF <u>NOTICE THEREOF</u>**

　　　　Upon the motion (the "<u>Motion</u>") of BroadStar Wind Systems Group LLC (the "<u>Borrower</u>") and the Borrower's direct and indirect subsidiaries (collectively, the "<u>Guarantors</u>"), each as a debtor and debtor in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1) and 364(e) of title 11 of the United States Code (as amended, the

"Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"),[1] and upon the Interim Hearing held before this Court on May 13, 2010, and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor, and subject to entry of the Final Order,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on their twenty (20) largest unsecured creditors (on a consolidated basis), the Prepetition Lenders, the DIP Lender and the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee"). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing is appropriate under, and complies with, Bankruptcy Rules 4001(b) and (c).

3. *Findings Regarding The DIP Loans.*

(a) The Debtors have an immediate need to obtain the DIP Loans and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is, therefore,

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(b) The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

4. *Authorization Of The DIP Loans And The DIP Documents.*

(a) The Debtors are hereby authorized to enter into and perform their obligations under the DIP Documents, including the DIP Credit Agreement, and the DIP Credit Agreement is hereby approved and incorporated herein by reference.

(b) (i) the Borrower is hereby authorized, on an interim basis, to borrow under the DIP Credit Agreement up to an aggregate principal amount of $250,000 of the DIP Loans for working capital and other general corporate purposes of the Debtors, and (ii) the Guarantors are hereby authorized to guarantee the obligations of the Borrower under the DIP Documents, in accordance with the terms of the DIP Documents without the need for approval of this Court.

(c) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Lender determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents.

5. *Superpriority Claims.*

(a) Except to the extent expressly set forth in this Order in respect of the Carve Out pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall

INTERIM ORDER APPROVING USE OF CASH COLLATERAL AND DIP FINANCING- PAGE 3

DAL:766055.6

constitute allowed senior administrative claims (the "DIP Superiority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b) For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) after the occurrence and during the continuance of an Event of Default, the payment of accrued and unpaid professional fees and expenses incurred by the Debtors and the Committee and allowed by this Court, in an aggregate amount not exceeding $100,000 (plus all unpaid professional fees and expenses allowed by this Court that were incurred prior to the occurrence of such Event of Default); *provided, however,* that (A) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lender or the Prepetition Lenders, (B) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under sections 330 and 331 of the Bankruptcy Code and (C) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

6. *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or

other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any property, the following security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), in each case subject only to the Carve Out (all such liens and security interests granted to the DIP Lenders pursuant to this Order, the "DIP Liens"):

(a) Senior Liens On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code and subject to applicable law, a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property and the proceeds of all of the foregoing; *provided, however,* that the Unencumbered Property may not include the Avoidance Actions and any assets upon which a lien or security interest may not be lawfully granted, but subject to the entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b) Liens Priming Prepetition Lenders' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, senior priming lien on, and security interest in, all Prepetition Collateral and after-acquired property.

The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 12(a) below)), and all present and after-acquired assets that are presently subject to liens that are junior to the liens that secure the Prepetition Secured Obligations.

(c) <u>Liens Senior To Other Liens</u>. The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

7. *Remedies After Event of Default.* Upon entry of the Final Order, the automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Lender to exercise, five (5) business days following written notice to the Debtors after the occurrence of any of the events listed in section 8.1 of the DIP Credit Agreement or paragraph 15(b) (each an "<u>Event of Default</u>"; the five (5) business days following written notice of such Event of Default, provided such Event of Default has not been cured or waived during such five (5) business day period, the "<u>Termination Date</u>"), all rights and remedies provided for in this Order and the DIP Documents. Upon the Termination Date, (i) the DIP Obligations shall become immediately due and payable and (ii) the DIP Lender may exercise the rights and remedies available under the DIP Documents, this Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the DIP Collateral in order to collect the DIP Obligations. Notwithstanding the occurrence of the Termination Date or anything

**INTERIM ORDER APPROVING USE OF CASH COLLATERAL AND DIP FINANCING- PAGE 6**

DAL:766055.6

herein, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Order shall survive the Termination Date. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. Any delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement.

8. *The Cash Collateral.* To the extent any of the Debtors' cash, including without limitation, any cash and other amounts on deposit or maintained by the Debtors in any account or accounts with the Prepetition Lenders and any cash proceeds of the disposition of any Prepetition Collateral, such cash constitutes proceeds of the Prepetition Collateral and, therefore, is cash collateral of the Prepetition Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

9. *Use Of Prepetition Collateral (Including Cash Collateral).* The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date for working capital and general corporate purposes in accordance with the terms and conditions of this Order; *provided, however,* that (a) the Prepetition Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

10. *Adequate Protection*. The Prepetition Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate

diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming by the DIP Liens of the liens on the Prepetition Collateral for the benefit of the Prepetition Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "<u>Adequate Protection Obligations</u>"). As adequate protection, the Prepetition Lenders are hereby granted the following:

      (a)    <u>Adequate Protection Liens</u>. As security for the payment of the Adequate Protection Obligations, the Prepetition Lenders are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "<u>Adequate Protection Liens</u>"), subject and subordinate only to (i) the DIP Liens and (ii) the Carve Out.

      (b)    <u>Section 507(b) Claim</u>. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the DIP Superpriority Claims. Except to the extent expressly set forth in this Order, the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations shall have been indefeasibly paid in full in cash.

(c) <u>Information</u>. The Debtors shall promptly provide to the Prepetition Lenders any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Lender.

11. *Perfection Of DIP Liens And Adequate Protection Liens.*

(a) The DIP Lender and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to them hereunder. Whether or not the DIP Lender or the Prepetition Lenders shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Final Order.

(b) A copy of this Order may, in the discretion of the DIP Lender or the Prepetition Lenders, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c) The Debtors shall execute and deliver to the DIP Lender and the Prepetition Lenders, as the case may be, all such agreements, financing statements, instruments

and other documents as the DIP Lender or the Prepetition Lenders may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

12. *Preservation Of Rights Granted Under This Order.* If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Lenders, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Lender or the Prepetition Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Lender and the Prepetition Lenders of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Lender and the Prepetition Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations and all Adequate Protection Obligations.

13. *Order Governs*. In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

14. *Binding Effect; Successors And Assigns*. The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Lender, the Prepetition Lenders, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11

trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender, the Prepetition Lenders and the Debtors and their respective successors and assigns, *provided that*, except to the extent expressly set forth in this Order, the DIP Lender and the Prepetition Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of any Debtor.

15. *Limitation Of Liability*. Nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lenders any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

16. *Effectiveness*. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

17. *Final Hearing*. The Final Hearing is scheduled for **May 27, 2010 at 1:15 p.m.,** prevailing Central time, before this Court.

18. *Final Hearing Notice*. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Such notice shall also state that (i) the DIP Credit Agreement is

on file with the Court and will be provided to parties in interest upon request and (ii) the form of Final Order will be filed with the Court no less than five (5) business days prior to the Final Hearing and will be provided to parties in interest upon request. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors, Andrews Kurth LLP, 1717 Main Street, Suite 3700, Dallas, Texas 75201 (Attention: Jason S. Brookner and Monica S. Blacker), (b) counsel to the Prepetition Lenders and the DIP Lender, Law Offices of John T. Del Negro, LLC, 105 Court Street, Suite 304, New Haven, CT 06511-6957 (Attention: John Del Negro) and Gardere Wynne Sewell, LLP, 1601 Elm Street, Suite 3000, Dallas, Texas 75201 (Attention: Robert Sarfatis) and (c) the Office of the U.S. Trustee for the Northern District of Texas, 1100 Commerce Street, 9th Floor, Dallas, Texas 75242 (Attention: Mary Frances Durham), and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case to allow actual receipt by the foregoing no later than May 25, 2010 at 4:00 p.m. prevailing Central time.

# # # END OF ORDER # # #