Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| | § | |
| Debtors. | § | **Hearing: January 5, 2011, 1:15 p.m.** |

**DEBTORS' MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY
ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES SUBJECT TO HIGHER AND BETTER OFFERS**

> **HEARING DATE ON SUCH SALE IS SET FOR JANUARY 5, 2011, AT 1:15 P.M. WHICH IS 26 DAYS FROM THE DATE OF SERVICE HEREOF. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE ST., DALLAS, TEXAS 75242, AT LEAST 2 DAYS IN ADVANCE OF SUCH HEARING DATE.**
>
> **ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

BroadStar Wind Systems Group LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"),[1] for their Motion For Authority to Sell Substantially All Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Subject to Higher and Better Offers (the "<u>Motion</u>"), respectfully represent:

## <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## <u>INTRODUCTION</u>

3.      On May 11, 2010 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

4.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession.  The Debtors cases are being jointly administered.

5.      No official committee, trustee or examiner has been appointed.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: BroadStar Wind Systems Group LLC ("BWSG") (2489), Broadstar Wind Systems Management LLC ("BWSM") (8805), Broadstar Wind Systems LP ("BWS") (8806), BroadStar Developments Management LLC  ("BDM") (8582), BroadStar Developments LP ("BD") (8597).  The Debtors' corporate headquarters are located at 1440 Regal Row, Suite 250, Dallas, TX 75247.

## BACKGROUND

6.    The Company is a distributed wind generation company focused on the development of wind turbines for on-site electrical power generation for commercial, government and industrial buildings.  The Company is a development stage company with development engineering capabilities, but no production engineering capabilities.

7.    Prior to the Petition Date, the Debtors instituted litigation in the 191st Judicial District Court of Dallas County, styled *BroadStar Wind Systems Group LLC v. Thomas Stephens*. On February 24, 2010, Defendant Thomas Stephens ("Defendant") removed the action (the "Litigation") to the United States District Court for the Northern District of Texas Dallas Division (the "District Court"), Civil Action No. 10-CV-0369-F. The Litigation is pending before the Honorable Judge W. Royal Furgeson, Jr. in the District Court.

8.    The Litigation was initiated against Defendant, a former officer of BWSG, who breached various duties and agreements with BWSG, and who challenged the Company's rights to various patents and other intellectual property, including a customized pitch schedule calculator program, the AeroCam™ technology, and extensive research and testing, all of which is integral to the Debtors' ability to operate and to continue to develop wind turbines. The Litigation also involves efforts by BWSG to secure the return from Defendant of various forms of proprietary corporate property.

9.    On November 29, 2010, trial in the Litigation occurred before the District Court.[2] The District Court indicated that it would rule shortly; however, as of today's date, a final ruling has not been received.

---

[2] The Court previously issued an order providing for two separate trials to proceed in the Litigation. The trial that proceeded on November 29, 2010 related to the intellectual property ownership issue.

10. Debtors herein are seeking authorization to sell substantially all of their assets (the "Assets"), subject to higher and better offers upon resolution of the Litigation in their favor. If the Litigation is not decided in the Debtors' favor, the Debtors most likely will seek to convert this case to a case under Chapter 7 of the Bankruptcy Code or to dismiss the cases and liquidate the estates.

11. BroadStar Investment Company LLC, the Company's debtor in possession lender (the "DIP Lender") has a lien on substantially all of the Debtors' assets, which includes the Assets to be sold pursuant to this Motion. The current amount owed to the DIP Lender is in excess of $4,300,000.00 (the "Indebtedness").[3]

12. Pursuant to the attached Purchase and Sale Agreement (the "Purchase Agreement"), the DIP Lender ("Purchaser") has indicated that it will credit bid its Indebtedness in exchange for the Assets. In addition to its credit bid, as part of the purchase price, the Purchaser will pay all of the estates' administrative expenses and will provide an additional $25,000 to be distributed to all allowed prepetition unsecured creditors *pro rata*. A true and correct copy of the Purchase Agreement is attached hereto as Exhibit "A".

## RELIEF REQUESTED

13. By this Motion, the Debtors seek an order of this Court authorizing the sale of substantially all of the Debtors' Assets pursuant to the Purchase Agreement, subject to higher and better offers, pursuant to sections 363(b) and (f) of the Bankruptcy Code, on the condition that the Debtors are successful in the Litigation and it is determined that the Debtors own certain intellectual property. In connection therewith, the Debtors respectfully request that the Court find that the Purchaser is not a successor to the Debtor, and that the sale of the Assets pursuant to the order attached hereto as Exhibit "B" (the "Sale Order") does not constitute a de facto merger or

---

[3] This amount includes the $2.3 million loaned as DIP Financing and the approximate $2 loaned to the Debtors prepetition.

consolidation of the Debtors and Purchaser, or a continuation of the Debtors' business, and the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Assets.

14.     This Motion has been set for hearing on January 5, 2011 at 1:15 p.m. (the "<u>Hearing</u>"). Any party that would like to purchase the Assets for consideration that is higher and better (in the Debtors' sole discretion and in the exercise of their sound business judgment) should appear at the Hearing with a marked up Purchase Agreement and readily available funds.

15.     Debtors understand that, in the event they are not successful in the Litigation, any sale of their Assets will not include the intellectual property that is the subject of the Litigation. Furthermore, Debtors anticipate that there will not be any bidders for the Assets other than the proposed Purchaser; however, the proposal herein and in the Purchase Agreement is subject to higher and better offers. To the extent any higher or better offers are received prior to the commencement of the Hearing, the Debtors will seek a short continuance of the Hearing in order to conduct an auction for the Assets. Following any such auction, the Debtors will return to the Court with a status report, and seek authorization to sell the Assets to the highest bidder.

<u>AUTHORITY</u>

16.     Section 363(b) of the Bankruptcy Code provides that a trustee (and by implication, a debtor in possession), after notice and a hearing, may sell property of the estate outside the ordinary course of business, 11 U.S.C. § 363(b), as long as it is a valid exercise of the debtor in possession's business judgment.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986)(for a "trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

17.     Section 363(f) of the Bankruptcy Code provides in part that a trustee may sell property of the estate outside the ordinary course of business free and clear of any other entity's interest in such property if such entity consents, such interest is in bona fide dispute, or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. §§ 363(f)(2), (f)(4) and (f)(5).

18.     Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of all liens, claims, interests and encumbrances with any such liens, claims, interests and encumbrances attaching to the proceeds of sale.  11 U.S.C. § 363(f).  Sale of the Assets free and clear may proceed under sections 363(f)(2) and (f)(5) of the Bankruptcy Code, for the primary reasons that the DIP Lender has consented to the sale, and if the DIP Lender is not the highest bidder and, thus, the ultimate purchaser, it will have a lien on the proceeds of the sale.  To the extent that there may be other liens on the Assets, the Debtors believe that such lienor(s) could be compelled in a legal or equitable proceeding to accept a money payment in lieu of their interest in the property, as authorized by Section 363(f)(5) of the Bankruptcy Code.

19.     The Debtors have been actively marketing the Assets. In addition, this Motion has been served on all known parties who have expressed interest in the Assets. Additionally, a Notice of the Sale of Assets will be published in the Dallas Business Journal. In the Debtors' business judgment, the Sale of the Assets to the DIP Lender is in the best interest of the estates. The Debtors believe that without the sale the Assets will be liquidated, there will not be sufficient funds remaining after the sale to pay the DIP Lender in full and there will be no recovery for unsecured creditors.  The Purchase Agreement provides for payment of administrative claims in full and a recovery for the unsecured creditors.

20. The Debtors are aware of their fiduciary duties to the estates and creditors. As such, the Debtors are willing to consider, in the sound exercise of their business judgment and in furtherance of their fiduciary duties, any higher and better offers they receive for the purchase of the Assets. If, prior to the commencement of the Hearing, the Debtors have received any higher and better offers, they will apprise the Court at the Hearing, seek a short continuance, and conduct an auction at the Courthouse on January 5, 2011. If, as a result of the auction, a party other than the DIP Lender is the successful bidder for the Assets, the Debtors will reconvene the Hearing, at the Court's convenience, report the results of the auction and seek approval of the Sale of the Assets to the highest bidder. If no other offers are received, the Debtors will seek authorization to sell the Assets to the DIP Lender at the Hearing.

21. The Debtors respectfully request that this Court authorize the Debtors to sell their Assets, free and clear of any liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances in the Assets attaching to the proceeds of sale in the same order of priority as existed prior thereto.

**22.** The sale of the Assets in an expeditious fashion is essential. A delay in this process will only diminish recovery for the Debtors' respective creditors. The sale of the Assets is in the best interests of the estates, and all parties-in-interest, and represents the reasonable exercise of the Debtors' business judgment. Therefore, the ten-day stay under Bankruptcy Rules 6004(h) and 6006(d) should be waived.

<u>**NO PRIOR REQUEST**</u>

23. No prior request for the relief sought herein has been made to this Court or any other court.

## NOTICE

24.     The Debtors will provide notice of this Motion to the top thirty (30) unsecured creditors of the Debtors on a consolidated basis, the Office of the United States Trustee, all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, all lien holders, the taxing authorities, and all parties whom the Debtors believe may potentially be interested in purchasing, or bidding on, the Assets. The Debtors respectfully submit that such notice is appropriate and that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) granting the relief requested herein and (ii) granting such other and further relief as may be just and proper.

Respectfully submitted this 10th day of December, 2010.

**ANDREWS KURTH LLP**

By: /s/ Monica S. Blacker
    Monica S. Blacker
    Texas State Bar No. 00796534
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:    (214) 659-4400
Facsimile:    (214) 659-4401
Email:    mblacker@akllp.com

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of December, 2010, she caused a true and correct copy of the foregoing document to be served upon the Office of the United States Trustee, 976 Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242, on all parties asserting a lien on the Debtors' assets and on the parties appearing on the attached Service List via first class United States mail, postage prepaid or via ECF.

/s/Monica S. Blacker
Monica S. Blacker

# EXHIBIT A

PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (the "Agreement") is executed and delivered on this __ day of January, 2011, and is by and among BROADSTAR INVESTMENT COMPANY, LLC, a Connecticut limited liability company ("Buyer") and BROADSTAR WIND SYSTEMS GROUP, LLC, a Delaware limited liability company ("BWSG"), BROADSTAR DEVELOPMENTS LP, a Texas limited partnership ("Developments LP"), BROADSTAR DEVELOPMENTS MANAGEMENT LLC, a Texas limited liability company ("Developments Management"), BROADSTAR SYSTEMS, LP, a Delaware limited partnership ("Systems LP"), and BROADSTAR SYSTEMS MANAGEMENT, LLC, a Delaware limited liability company ("Systems Management"). Developments LP, Developments Management, Systems LP, and Systems Management, are sometimes individually referred to as a "Subsidiary Entity" and sometimes collectively referred to as the "Subsidiary Entities."  BWSG and the Subsidiary Entities are sometimes collectively referred to as the "Sellers."

RECITALS

A.     Each of the Sellers is the subject of a proceeding in bankruptcy (the "Bankruptcy Proceeding") as the result of a voluntary petition in bankruptcy filed by the Sellers with the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"); and

B.     The Sellers comprise a development stage distributed wind generation company(without production engineering capabilities) focused on the development of wind turbines for on-site electrical power generation for commercial, government and industrial buildings (the "Business"); and

C.     Buyer desires to purchase the assets of the Sellers used in connection with the Business and identified herein, except for certain excluded assets, and Seller desires to sell such assets to Buyer; and

D.     Buyer and Sellers wish to set forth the terms and conditions of the purchase herein.

NOW, THEREFORE, in consideration of the premises and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

ARTICLE I
DESCRIPTION OF ACQUIRED ASSETS

1.1     Description of Acquired Assets.  Subject to and following the approval of the Bankruptcy Court, and upon the other terms and conditions set forth in this Agreement, and in consideration of the Purchase Price (as defined below), at the Closing as set forth in Section 3.1, the Sellers shall sell to Buyer (or to an assignee of Buyer) the following assets, properties and contractual rights (the "Acquired Assets"), free and clear of all encumbrances:

1.1.1    All patents, inventions, designs, specifications, blueprints, industrial designs, trade secrets, rights to use, secret processes, formulae, copyrights, trademarks, trade names, service marks, and all applications, registrations, renewals and other rights relating to the foregoing (whether or not any registration or filing has been made with respect thereto) used in the Business, and all legal rights to require an assignment of patents or other intellectual property rights on the part of any employee or other person engaged in work for hire, including without limitation those items listed on Schedule 1.1.1 hereto (the "Intellectual Property Rights");

1.1.2    All tangible personal property owned by the Sellers and used in the Business including, without limitation, all fully or partially assembled wind turbines, any new, spare or replacement parts or subassemblies relating thereto or useable in building additional prototypes or production items, together with all tools, supplies, or inventories of any nature whatsoever ("Tangible Property");

1.1.3    All Seller-owned manual and automated computer, billing and accounting systems and components thereof, and all other transferable software and transferable programs used or for use in the Business, including but not limited to such other items listed on Schedule 1.1.3 (the "Systems");

1.1.4    All office equipment and furniture used or for use in the Business and owned by any of the Sellers, including but not limited to those listed on Schedule 1.1.4 (the "Office Equipment");

1.1.5    All permits, licenses, franchises, consents and approvals of every kind necessary to operate the Business, as the same are more completely described on Schedule 1.1.5 (the "Permits");

1.1.6    All of the contractual rights of Seller relating to the operation of the Business that are identified on Schedule 1.1.6 (the "Assumed Contractual Rights"); and

1.1.7    All other property of any nature whatsoever relating to the Business other than the Excluded Assets as defined below.

1.2    Excluded Assets.  The following assets are not being sold to Buyer pursuant to this Agreement (collectively, the "Excluded Assets"): any contractual rights not identified on Schedule 1.1.8, whether oral or in writing, and including any employment agreements or other obligations to pay compensation or any other form of remuneration.

1.3    No Assumption of Liabilities.  Buyer shall not, by the execution and performance of this Agreement or otherwise (including under theories of successor liability), assume, become responsible for or incur any liability of any nature of any of the Sellers, except for the obligations to perform under any Assumed Contractual Rights that first arise after the Closing.

ARTICLE II

PURCHASE PRICE

2.1 <u>Purchase Price</u>. The purchase price for the Acquired Assets (the "<u>Purchase Price</u>") shall consist of: (a) payment of all Administrative Expenses incurred in connection with the Bankruptcy Proceeding and approved as such by the Bankruptcy Court not paid or payable from the cash or accounts receivable of the Sellers; (b) a credit bid of the Debtor in Possession financing and/or pre-petition secured financing advanced by the Buyer of not less than One Million Dollars; plus (c) the sum of Twenty-Five Thousand Dollars to be used to pay pre-petition unsecured creditors. The Purchase Price, other than the credit bid amount, shall be payable in immediately available funds at the Closing.

ARTICLE III
CLOSING

3.1 <u>Closing</u>. The closing (the "<u>Closing</u>") of the transactions contemplated hereby (the "<u>Transactions</u>") shall take place at 10:00 a.m. at the offices of the Sellers on a mutually convenient date not later than five (5) business days after the date on which this Agreement is approved by the Bankruptcy Court (the "<u>Closing Date</u>").

3.2 <u>Deliveries by the Sellers</u>. At the Closing, the Sellers shall deliver to Buyer a duly executed General Conveyance, Assignment and Bill of Sale, specific Patent Assignments or similar instruments, separate assignments of the Assumed Contractual Rights, and such other separate instruments of sale, transfer or assignment, as the Buyer may reasonably request.

3.3 <u>Deliveries by Buyer</u>. At the Closing, the Buyer shall deliver to the Sellers the cash portion of the Purchase Price Buyer, together with an Assumption of the Assumed Contractual Rights, and other documents or instruments as the Buyer may reasonably request.

3.4 <u>Further Assurances</u>. From time to time on and after the Closing and without further consideration, and for so long as the particular Seller may remain in existence, the parties to this Agreement shall each deliver or cause to be delivered to the other parties, at such times and places as shall reasonably be requested, such additional instruments as any of the others may reasonably request for the purpose of carrying out this Agreement and the Transactions.

ARTICLE IV
REPRESENTATIONS AND WARRANTIES OF SELLERS

The Sellers severally represent and warrant to Buyer that:

4.1 <u>Organization</u>. Each Seller is a limited liability company or a limited partnership, as the case may be, duly organized, validly existing and in good standing under the laws of its state of organization;

4.2     Power and Authority.  Each Seller has the full legal right, power and authority to enter into this Agreement and to consummate the Transactions, and all company action of each Seller and its respective owners necessary to approve the Transactions has been taken.

4.3     Enforceability.  Each Seller has duly executed and delivered this Agreement, and (assuming due authorization, execution and delivery by Buyer) this Agreement constitutes a legal, valid and binding obligation of each Seller enforceable against each of them in accordance with its terms.

4.4     No Conflict.  The execution, delivery and performance of this Agreement by each Seller, and the consummation of the Transactions, do not and will not:  (a) violate, conflict with or result in the breach of any provision of any of the Sellers' respective articles of organization, certificates of formation, operating agreements, or limited partnership agreements; (b) conflict with or violate in any material respect any law or governmental order applicable to the Acquired Assets, the Business, any Seller or any of their respective assets, properties or businesses; or (c) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time would become a default) under, require any consent under, or give to any other person any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, or result in the creation of any encumbrance on any of the Acquired Assets or any properties of any Seller.

4.5     Governmental Consents and Approvals.  The execution, delivery and performance of this Agreement, and the consummation of the Transactions, by the Sellers do not and will not require any consent or action by, filing with or notification to, any governmental authority other than the approval of the Bankruptcy Court.

4.6     Intellectual Property Rights.  Schedule 1.1.1 sets forth all Intellectual Property Rights that Sellers own, use or license or in which any Seller has any interest.

4.7     Compliance with Law.  Sellers have conducted and continue to conduct the Business in material compliance with all laws, permits and governmental orders applicable to the Business

ARTICLE V
REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to each Seller that:

5.1     Organization.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Connecticut;

5.2     Power and Authority.  Buyer has the full legal right, power and authority to enter into this Agreement and to consummate the Transactions, and all company action of the Buyer and its Members necessary to approve the Transactions has been taken.

5.3     Enforceability.  Each Seller has duly executed and delivered this Agreement, and (assuming due authorization, execution and delivery by the Sellers) this Agreement constitutes a legal, valid and binding obligation of the Buyer enforceable against it in accordance with its terms.

5.4     No Conflict.  The execution, delivery and performance of this Agreement by the Buyer, and the consummation of the Transactions, do not and will not:  (a) violate, conflict with or result in the breach of any provision of any of the Buyer's articles of organization or operating agreement; (b) conflict with or violate in any material respect any law or governmental order applicable to the Buyer or any of its assets, properties or businesses; or (c) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time would become a default) under, require any consent under, or give to any other person any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, or result in the creation of any encumbrance on any of the assets or any properties of the Buyer.

5.5     Governmental Consents and Approvals.  The execution, delivery and performance of this Agreement, and the consummation of the Transactions, by the Buyer do not and will not require any consent or action by, filing with or notification to, any governmental authority other than the approval of the Bankruptcy Court.

5.6     Compliance with Law.  Buyer has conducted its business activities in material compliance with all laws, permits and governmental orders.

ARTICLE VI
GENERAL PROVISIONS

6.1     Binding Effect; No Third Party Beneficiaries.  This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns.  Nothing in this Agreement is intended to or shall confer upon any other person, including any employee or former employee of any Seller, any legal or equitable right, benefit or remedy of any nature whatsoever, including any rights of employment for any specified period.

6.2     Amendment.  This Agreement may not be amended except by a written instrument executed by each party to this Agreement.

6.3     Entire Agreement.  This Agreement (together with the other agreements contemplated by this Agreement) and the related Bankruptcy Order is the final, complete and exclusive statement of the agreement among the parties with relation to the subject matter of this Agreement.  There are no oral representations, understandings or agreements covering the same subject matter as this Agreement.  This Agreement supersedes and cannot be varied, contradicted or supplemented by evidence of, any prior or contemporaneous discussions, correspondence, or oral or written agreements or arrangements of any kind.

6.4     Counterparts.  This Agreement may be executed in two or more original or facsimile counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

6.5     Notices.  All notices or other communications required or permitted under this Agreement shall be in writing and may be given by depositing the same in the United States mail, addressed to the party to be notified, postage prepaid and registered or certified with return receipt

requested, by overnight courier, by facsimile with delivery verification or by delivering the same in person to such party, addressed as follows:

> If to any Seller, addressed to them at:
>
> c/o Monica Blacker, Esq. and John Quattrocchi, Esq.
> Andrews Kurth LLP
> 1717 Main Street, Suite 3700
> Dallas, TX 75201
>
>
> If to Buyer, addressed to it at:
>
> BROADSTAR INVESTMENT COMPANY, LLC
> 10 Columbus Boulevard, 4th Floor
> Hartford, CT 06106
> Attn: John Pavia, Esq.
>
> and a copy to:
>
> Law Offices of John T. Del Negro, LLC
> 105 Court Street, Suite 304
> New Haven, CT 06511-6957

Notice shall be deemed given and effective the day personally delivered or facsimiled with delivery verification, the day after being sent by overnight courier, subject to signature verification, and three business days after the deposit in the U.S. mail of a writing addressed and sent as provided above or when actually received, if earlier. Any party may change the address for notice by notifying the other parties of such change in accordance with this Section.

      7.6    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas.

      6.6    <u>Severability</u>. If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall, to the extent possible, be modified in such manner as to be valid, legal and enforceable but so as most nearly to retain the intent of the parties. If such modification is not possible, such provision shall be severed from this Agreement. In either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

      6.7    <u>Construction</u>. The headings in this Agreement are inserted for convenience only, and shall not constitute a part of this Agreement or be used to construe or interpret any of its provisions. The parties have participated jointly in negotiating and drafting this Agreement. If a question of interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no

presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement. Any reference to any statute shall be deemed to refer to the statute, as amended, and to all rules and regulations promulgated thereunder, as amended, unless the context requires otherwise. The word "include" or "including" means include or including, without limitation. The representations, warranties and covenants in this Agreement shall have independent significance. Accordingly, if any party has breached any representation, warranty or covenant contained in this Agreement in any respect, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) that the party has not breached shall not detract from or mitigate the fact the party is in breach of the first representation, warranty or covenant.

6.8     <u>Expenses of Transaction; Reliance on Advisors</u>. Whether or not the Transactions are consummated: (a) Buyer will pay the fees, expenses and disbursements of Buyer and its representatives incurred in connection with this Agreement; and (b) Sellers will pay the fees, expenses and disbursements of Sellers and their respective representatives incurred in connection with this Agreement.

6.9     <u>No Brokers</u>. Sellers represent and warrant to Buyer and Buyer represents to Sellers that the warranting party has had no dealings with any broker, agent or other Person so as to entitle such Person to a commission or fee in connection with the Transactions.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, Buyer and Sellers have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BroadStar Investment Company, LLC**

By_____
   James R. Barnes
   Its Manager, duly authorized

BroadStar Wind Systems Group, LLC

By_____
   Roy C. King
   Its President and CEO
   Duly authorized

| **BroadStar Developments, LP** | **BroadStar Systems, LP** |
|---|---|
| By BroadStar Developments Management LLC<br>Its General Partner | By BroadStar Wind Systems Group, LLC<br>Its General Partner |
| By BroadStar Group LLC<br>Its Managing Member | By_____<br>   Roy C. King<br>   Its President and CEO<br>   Duly authorized |
| By_____<br>   Roy C. King<br>   Its President and CEO<br>   Duly authorized | |
| **BroadStar Developments Management LLC** | **BroadStar Wind Systems Group, LLC** |
| By BroadStar Group LLC<br>Its Managing Member | By_____<br>   Roy C. King<br>   Its President and CEO<br>   Duly authorized |
| By_____<br>   Roy C. King<br>   Its President and CEO<br>   Duly authorized | |

<u>**SCHEDULE 1.1.1**</u>

<u>**Intellectual Property Rights**</u>

a.  <u>Rotary Wing Aircraft (U.S. Pat. No. 7,370,828) (the "828 Patent")</u> – directed to a rotary wing aircraft that includes longitudinally extending rotor blades and can vary their pitch (angle) during rotation.

- *Assignment*, dated 4/28/05, from Stephens to TGS Innovations, LP (assigning "right, title and interest in" Rotary Wing Aircraft and "worldwide rights," including all "continuations….").

- *Assignment*, dated 8/29/06, from TGS Innovations, LP to X-Blade (assigning "any and all right, title and interest whatsoever" in Rotary Wing Aircraft).

- *Assignment based on Name Change,* dated 10/24/08, from X-Blade to Broadstar Developments LP.[4]

b.  <u>Wind Driven Power Generator (U.S. Pat. No. 7,365,448 (the "448 Patent"))</u> – directed at the wind driven power generator, including a frame, a rotor, and a cam mechanism to alter the pitch of the rotor blades.

- *Assignment,* dated 8/17/06, from Stephens to X-Blade.

- *Assignment based on Name Change,* dated 10/24/08, from X-Blade to Broadstar Developments LP.

c.  <u>Movable Cam (U.S. Pat. Appl. No. 12/110,100)</u>

- *Assignment*, dated 7/3/08 by Stephens and Else to X-Blade.

d.  <u>Wind Driven Power Turbine (U.S. Pat. Appl. No. 61/031,317)</u>

- *Assignment*, dated 11/18/08 by Stephens and Else to BroadStar Developments LP.

e.  <u>Wind Driven Power Turbine and Applications of Same (U.S. Pat. Appl. No. 61/057,856)</u>

*Assignment*, dated 11/18/08, from Stephens and Else to BroadStar Developments, LP.

---

# **SCHEDULE 1.1.3**

## **Systems**

[to be completed]

# **SCHEDULE 1.1.4**

## **Office Equipment**

-       All personal computers, laptops, printers, scanners, fax machines

-       All furniture and furnishings

-       All beepers, cell phones, PDAs.

# SCHEDULE 1.1.5

## Permits

[to be completed]

## SCHEDULE 1.1.6

## Assumed Contract Rights

- All rights under any wind studies

- All rights under any work-for-hire or similar agreements with any
  employees or consultants relating to the mandatory assignment of any
  improvements, product designs, product developments etc.

_____

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| Debtors. | § | |

**ORDER GRANTING DEBTORS' MOTION FOR AUTHORITY TO SELL
SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES SUBJECT TO HIGHER AND BETTER OFFERS**

Upon the Motion of BroadStar Wind Systems Group LLC, *et al.*, the above-captioned debtors

and debtors in possession (collectively, the "<u>Debtors</u>"), for Authority to Sell Substantially All Assets

Free and Clear of All Liens, Claims, Interests and Encumbrances Subject to Higher and Better Offers

(the "<u>Motion</u>"); and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334, and this being a core proceeding pursuant to 28 U.S.C. § 157 (b)(2); and good and sufficient

notice of the Motion having been given and no other or further notice of the Motion being required,

and after due deliberation and good cause appearing therefor, it is hereby

ORDERED that the Motion be and it hereby is, granted to the extent provided herein; and it is further

ORDERED that the Debtors shall be, and hereby are, authorized to sell its assets to the DIP Lender pursuant to the terms set forth in the Asset Purchase Agreement attached to the Motion as Exhibit "A"; and it is further

ORDERED that the Debtors be, and hereby are, authorized and the Debtors be, and they hereby are, directed to execute any and all appropriate documentation in connection with and in furtherance of the transaction set forth in the Motion, and to do all such further acts and things as may be reasonably necessary to complete the transactions and consummate the same; and it is further

ORDERED that the sale of the Assets be, and are hereby deemed to be, free and clear of any and all liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances to attach to the proceeds of sale in the same order of priority as existed prior thereto; and it is further

ORDERED that any party who has filed a lien on the Property shall be required to file a release of lien, claim or encumbrance of any other such document as may be required under applicable law to cancel and remove from the public record any such lien, encumbrance or claim; and it is further

ORDERED that, to the extent the DIP Lender is not the successful purchaser and/or has not previously been paid in full, the Debtors shall pay the proceeds of the sale of Assets to DIP Lender; and it is further

ORDERED that, the Purchaser is not a successor to the Debtor, and that the sale of the Assets pursuant to this Order does not constitute a de facto merger or consolidation of the Debtors and

Purchaser, or a continuation of the Debtors' business, and the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Assets; and it is further

ORDERED that, notwithstanding the provisions of Bankruptcy Rule 6004(g), this Order shall be effective immediately; and it is further

ORDERED that the Court shall retain exclusive jurisdiction over any dispute arising with respect to the relief granted herein, including, but not limited to, the enforcement of the terms and conditions of this Order.

# # # END OF ORDER # # #

**In re: BroadStar, 10-33373**
**Service List 11-1-2010**


Buzzwork
TXS Industrial Design
11999 Plano Road, Suite 190
Dallas, TX  75243


Heinman Family Limited Partnership
2 Winfield Pointe Lane
St. Louis, MO  63141


Fabricon, Inc.
8804 Chancellor Row
Dallas, TX 75247


Red Car Restorations, Inc.
2543 FM 1139
Rockwall, TX 75032


Custom Trailer Solutions
160 W. Carmel Drive, Suite 281
Carmel, IN  46032


The Danamraj Law Group, P.C.
5910 N. Central Expressway
Ste. 1450
Dallas, TX  75206


Met Laboratories, Inc.
914 West Patapsco Ave.
Baltimore, MD 21230


Digital Criterion
1133 Broad Street, #710
New York, NY 10010


Astra, Inc.
1660 NW 65th Ave., Ste. 1
Plantation, FL 33313


SolidBox
4825 Weidmar Lane #100
Austin, TX  78745


Invention House, LLC
414 E. Clinton Place
Kirkwood, MO 63122


Barnum & Celillo Electric, Inc.
3900 Taylor Street
Sacramento, CA  95838

Roy C. King
1440 Regal Row, Suite 250
Dallas, TX 75246

High Profile, Inc.
4841 LBJ Freeway, Ste 500
Dallas, TX  75244

Robert Sarfatis
Gardere Wynne Sewell
1601 Elm Street
Suite 3000
Dallas,  TX  75201

John T. Del Negro
Law Offices of John T. Del Negro, LLC
105 Court Street, Suite 304
New Haven, CT  06511-6957

JPMorgan Chase Bank
Attn: Annastasia Ulmer
2200 Ross Ave.
Dallas, TX 75201

Sovereign Bank
17950 Preston Rd., Suite 500
Dallas, TX 75252

Mary Frances Durham
UST U.S. Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-1496

Paster, West & Kraner, p.c.
138 N. Meramec Avenue
St. Louis, Missouri 63105

Regional Marine Industries, Inc.
2300 Jetport Drive
Orlando, FL  32809-7895

MSC Software Corporation
P.O. Box 409734
Atlanta, GA  30384

Ahern Rentals
4241 Arville Street
Las Vegas, NV  89103

Green Mountain Energy
P.O. Box 65001
Dallas, TX  75265-0001

Apollo Staffing, Inc.
P.O. Box 1103
Social Circle, GA  30029

Atlas Machine and Welding Services Inc.
860 S. Broadway Street
Joshua, TX  76058

Gardere Wynn Sewell LLP
1601 Elm Street
3000 Thanksgiving Tower
Dallas, TX  75201

Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201
*Counsel for Dallas County*

Thomas V. Malorzo
P.O. Box 59286
Dallas, TX 75229-1283
*Counsel for Thomas G. Stephens
and T.G. Stephens Capital, L.L.C.*

Southwest Office Systems, Inc.
P.O. Box 612248
DFW Airport, TX 75261

Frances A. Smith
Shackelford Melton & McKinley
3333 Lee Parkway, Tenth Floor
Dallas, TX 75219
*Counsel for Mogo Interests, LLC and Mercury
Communications Services, Inc.*

Melissa S. Hayward
Franklin Skierski Lovall Haward LLP
10501 N. Central Expy, Ste. 106
Dallas, TX 75201
*Counsel for Heinman Family Limited Partnership*

Scott D. Johannessen
Law Office of Scott D. Johannessen
3200 West End Avenue, Suite 500
Nashville, TN 37203
*Counsel for Etcetera LLC*

Stephanie D. Curtis; Mark A. Castillo
Sarah A. Walters
The Curtis Law Firm, PC
901 Main Street, Suite 6515
Dallas, TX 75202
*Counsel for Stephen Else*

Mercury Communication Services, Inc.
1283 Record Crossing
Dallas, Texas 75235