Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| | § | |
| Debtors. | § | EXPEDITED HEARING REQUESTED |

**DEBTORS' EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER
APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I)
APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS
AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S)
BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER, (II)
AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
<u>ENCUMBRANCES AND (III) GRANTING RELATED RELIEF</u>**

BroadStar Wind Systems Group LLC and its affiliated debtors and debtors in possession in

the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"),[1] for their

Motion For Entry of (A) an Order Approving Bid and Notice Procedures; and (B) an Order (I)

Approving a Purchase Agreement Between the Debtors and the Purchaser, or Such Other Purchase

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: BroadStar Wind Systems Group LLC ("BWSG") (2489), Broadstar Wind Systems Management LLC ("BWSM") (8805), Broadstar Wind Systems LP ("BWS") (8806), BroadStar Developments Management LLC ("BDM") (8582), BroadStar Developments LP ("BD") (8597). The Debtors' corporate headquarters are located at 1440 Regal Row, Suite 250, Dallas, TX 75247.

Agreement(s) Between the Debtors and the Successful Bidder, (II) Authorizing the Sale of all or Substantially all of the Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, and (III) Granting Related Relief (the "Motion"), respectfully represent:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

3.      On May 11, 2010 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession.  The Debtors cases are being jointly administered.

5.      No official committee, trustee or examiner has been appointed.

## BACKGROUND

6.      The Company is a distributed wind generation company focused on the development of wind turbines for on-site electrical power generation for commercial, government and industrial buildings.  The Company is a development stage company with development engineering capabilities, but no production engineering capabilities.

7.      Prior to the Petition Date, the Debtors instituted litigation in the 191st Judicial District Court of Dallas County, styled *BroadStar Wind Systems Group LLC v. Thomas Stephens*.  On February 24, 2010, Defendant Thomas Stephens ("Defendant") removed the action (the "Litigation")

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 2**

DAL:787355.1

to the United States District Court for the Northern District of Texas Dallas Division (the "District Court"), Civil Action No. 10-CV-0369-F. The Litigation is pending before the Honorable Judge W. Royal Furgeson, Jr. in the District Court.

8. The Litigation was initiated against Defendant, a former officer of BWSG, who breached various duties and agreements with BWSG, and who challenged the Company's rights to various patents and other intellectual property, including a customized pitch schedule calculator program, the AeroCam™ technology, and extensive research and testing, all of which is integral to the Debtors' ability to operate and to continue to develop wind turbines. The Litigation also involves efforts by BWSG to secure the return from Defendant of various forms of proprietary corporate property.

9. On December 20, 2010, the District Court ruled that the Debtors owned the Plaintiff, and that Mr. Stephens never owned it (the "December 20 Order"). Stephens has filed a Notice of Appeal of the December 20 Order. The Debtors believe they will be successful in the appeal.

10. Debtors herein are seeking authorization to sell substantially all of their assets (the "Assets"), to the party that submits the highest and best offer in accordance with the Bid Procedures (as defined more fully below).

**The Purchase Agreement**

11. BroadStar Investment Company LLC, the Company's debtor in possession lender (the "DIP Lender") has a lien on substantially all of the Debtors' assets, which includes the Assets to be sold pursuant to this Motion. The current amount owed to the DIP Lender is in excess of $4,300,000.00 (the "Indebtedness").[2]

---

[2] This amount includes the $2.3 million loaned as DIP Financing and the approximate $2 million loaned to the Debtors prepetition.

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 3**

12.     Pursuant to the attached Purchase and Sale Agreement (the "Purchase Agreement"), the DIP Lender ("Purchaser") has indicated that it will credit bid its Indebtedness in exchange for the Assets. In addition to its credit bid, as part of the purchase price, the Purchaser will pay all of the estates' allowed administrative expenses (approximately $300,000) and will provide an additional $20,000 to be distributed to all allowed prepetition unsecured creditors *pro rata*.[3]  A true and correct copy of the Purchase Agreement is attached hereto as Exhibit "A".  The Debtors believe that, subject to the receipt of higher and better proposals through the Bid Procedures, the Purchase Agreement represents the best alternative currently available to the Debtors.

## Bid Procedures[4]

13.     The Debtors are in the process of soliciting bids for the Assets utilizing the Bid Procedures, substantially in the form attached hereto as Exhibit "B". The Bid Procedures describe, among other things, the assets available for sale, the manner in which bids become "qualified," the coordination of diligence efforts among bidders and the Debtors, the receipt and negotiation of bids received, the conduct of any auction, and the selection and approval of the Successful Bidder. As provided in the Bid Procedures, the Debtors will only consider proposals to acquire all of the Assets. The price to be paid by the Successful Bidder for the Assets and the terms and conditions for the sale of such assets will be established at the Auction (as defined herein).

14.     The Bid Procedures (as summarized below) were developed consistent with the Debtors' competing needs to conduct an expedited sale process and to promote participation and

---

[3]      The Debtors believe the allowed unsecured prepetition claims will be less than $200,000.00.

[4]      The summary of Bid Procedures contained in this Motion is qualified in its entirety by reference to the Bid Procedures.  Any conflict between the terms described in this Motion and the Bid Procedures shall be resolved in favor of the Bid Procedures.  Capitalized terms used by not otherwise defined in this section shall have the meanings set forth in the Bid Procedures.

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 4**

active bidding. Moreover, the Bid Procedures reflect the Debtors' objective of conducting the Auction in a controlled, but fair and open, fashion, while ensuring that the highest and best bid is generated for the Assets.

15.     The following sets forth a summary of the key provisions of the Bid Procedures

<u>Marketing Process</u>

(i)     <u>Contact Parties</u>: The Debtors, in consultation with Nutmeg Advisory Partners, LLC d/b/a VR Business Sales ("<u>VR</u>"), have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing transaction to that of the Purchaser (a "<u>Competing Transaction</u>"), which list includes both potential strategic investors and potential financial investors (each, individually, a "<u>Contact Party</u>," and collectively, the "<u>Contact Parties</u>"). The Debtors and VR are already in the process of contacting the Contact Parties to explore their interest in pursuing a Competing Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a Transaction, regardless of whether such parties expressed any interest, at such. time, in exploring a Transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

(ii)     <u>Information Package</u>: The Debtors may distribute to each Contact Party an "Information Package" comprising: (i) a cover letter; (ii) a copy of the Bid Procedures; (iii) a copy of this Motion;+ and (iv) a copy of the December 20 Order.

(iii)     <u>Access to Diligence Materials</u>: To participate and to receive access to the diligence materials (the "<u>Diligence Materials</u>"), a party must qualify for access to Diligence Materials (a "<u>Preliminarily Interested Investor</u>"). All due diligence requests must be directed to VR. For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in their sole discretion, determine are business sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

<u>Marketing Process</u>

(i)     To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by the Debtors to satisfy each of the following conditions:

(a)     <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit in the amount of $100,000 to an interest bearing escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 5**

DAL:787355.1

(b)     Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Purchase Agreement. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "Competing Transaction Documents"). A Bid shall include a copy of the Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price). A Bid should propose a Competing Transaction involving substantially all of the Debtors' assets or operations. A Bid must propose a purchase price higher than the purchase price under the Purchase Agreement. The allocation of the purchase price in the Competing Transaction Documents will provide that the costs and expenses of engaging VR and the auction process will be paid from (i) first, the increase in purchase price from the Purchase Agreement; and (ii) second, to the extent the increase in purchase price is not sufficient to meet these costs and expenses, the Twenty Thousand and 00/100 ($20,000.00) Dollars to be used to pay pre-petition unsecured creditors.

(ii)     Corporate Authority: Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(a)     Proof of Financial Ability to Perform: Written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction. Such information should include, *inter alia*, the following:

•     contact names and numbers for verification of financing sources;

•     evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

•     the Bidder's current financial statements (audited if they exist); and

•     any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction; provided, however, that the Debtors shall

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 6**

DAL:787355.1

determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(iii)     <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(iv)     <u>Irrevocable</u>: A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid, such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

(v)     <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtors must receive a Bid in writing, on or before February 4, 2011 at 4:00 p.m. Central Standard Time (the "<u>Bid Deadline</u>").

A bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>."

<u>Auction</u>

If more than one Qualified Bid is received by the Bid Deadline (other than the Purchase Agreement), the Debtors will conduct an auction (the "<u>Auction</u>") to determine the highest and best Qualified Bid. This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities, if any; (iii) the ability of the Qualified Bidder to close the proposed Transaction; (iv) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (v) any purchase price adjustments; (vi) the impact of the Transaction on any actual or potential litigation; and (vii) the net after-tax consideration to be received by the Debtors' estates (collectively, the "<u>Bid Assessment Criteria</u>"). If no Qualified Bid (other than the Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Central time) on February 8, 2011, at the offices of Debtors' counsel, Andrews Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201 or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. The Auction shall be conducted according to the following procedures:

(vi)     <u>The Debtors Shall Conduct the Auction</u>: The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Purchase Agreement or, in the event a higher and better bid is received, such Qualified Bid (the "<u>Auction Baseline Bid</u>"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 7**

DAL:787355.1

Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

(vii)    Terms of Overbids: An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

- Additional Consideration: Any Overbid's additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt, marketable securities or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim, in any combination.

- Remaining Terms are the Same as for Qualified Bids: Except as modified in the Bid Procedures, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid. To the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

- Announcing Overbids: The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

- Consideration of Overbids: The Debtors reserve the right, in their reasonable business judgment to make one or more adjournments in the Auction to, among other things :facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient noncontingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(viii)    Backup Bidder: Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 8**

DAL:787355.1

judgment, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date that is sixty (60) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The deposit of the Backup Bidder shall be held by the Debtors until the earlier of twenty-four (24) hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.

(ix)     Additional Procedures: The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with the Bid Procedures.

(x)     Consent to Jurisdiction as Condition to Bidding: The Purchaser, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

(xi)     Closing the Auction: The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid. The Debtors shall not consider any bids submitted after the conclusion of the Auction.

(xii)     Sale Hearing: The Debtors will seek a hearing (the "Sale Hearing") on or before February 11, 2011, at which the Debtors will seek approval of the Transaction with the Successful Bidder.  Objections to the sale of the Assets to the Successful Bidder or Backup Bidder must be filed and served so that they are actually received by the Debtors no later than 4:00 p.m. (prevailing Central time) on February 9, 2011.

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 9**

DAL:787355.1

<u>Return of Good Faith Deposit</u>

(i)     The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of: (y) two (2) business days after the Assets have been sold pursuant to the closing of a sale approved by the Bankruptcy Court and (z) 60 days after conclusion of the Auction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## **RELIEF REQUESTED**

16.     By this Motion, the Debtors seek entry of (a) an order, substantially in the form attached hereto as <u>Exhibit "C"</u> (the "<u>Bid Procedures Order</u>"), approving (i) the Bid Procedures, and (ii) the form and manner of notices, substantially in the form attached hereto as <u>Exhibit "D"</u> (the "<u>Bid Procedures Notice</u>"); and (b) an order, substantially in the form attached hereto as <u>Exhibit "E"</u> (the "<u>Sale Order</u>") (i) approving the sale of the Assets to the Purchaser or the Successful Bidder, and (ii) authorizing the sale of all or substantially all of the assets of the Debtors free and clear of all Claims and Interests.  In connection therewith, the Debtors respectfully request that the Court find that the Purchaser is not a successor to the Debtor, and that the sale of the Assets pursuant to the Sale Order does not constitute a de facto merger or consolidation of the Debtors and Purchaser, or a continuation of the Debtors' business, and the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Assets.

## **AUTHORITY**

**I.     The Bid Procedures Are Appropriate and in the Best
         Interests of the Debtors, Their Estates and Their Creditors**

   <u>A.     The Proposed Notice of the Bid Procedures Is Appropriate</u>

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 10**

DAL:787355.1

17.     The Debtors seek to sell the Assets through a well-publicized sale and Auction. The Debtors and VR have already conducted an extensive marketing process. Moreover, the Debtors have developed a list of Contact Parties who will receive a copy of the Information Package. The list of Contact Parties was specifically designed to encompass those parties who the Debtors believe may be potentially interested in pursuing a Transaction and who the Debtors reasonably believe may have the financial resources to consummate a Transaction. The Bid Procedures are designed to elicit bids from one or more parties and to encourage a robust auction of the Assets, maximizing the value for the Debtors' estates and their creditors.

18.     Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections.

19.     Therefore, in addition to the Contact Parties, the Debtors propose to publish the Bid Procedures Notice once in the Wall Street Journal within five business days after entry of the Bid Procedures Order.

20.     The Debtors will also serve the notice of this Motion on the Notice Parties (as defined herein).  The Debtors believe that the foregoing notice is sufficient to provide effective notice of the Bid Procedures and the Auction to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation in the Debtors marketing process, while minimizing costs to the estates. Accordingly, the Debtors respectfully request that the Court find that the proposed notice procedures set forth in this Motion are sufficient, and that no other or further notice of the Bid Procedures or the Auction is required.

B.      The Bid Procedures Are Appropriate and Will Maximize Value

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 11**

DAL:787355.1

21.     Bid procedures should be approved when they provide a benefit to the debtors' estate by maximizing the value of the debtors' assets. *See In re Edwards*, 228 B.R. 552, 361 (Bankr. B.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

22.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Cadle Co. v. Moore (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) (debtor in possession "has the duty to maximize the value of the estate."); *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986 (1985) (same); *Four B. Corp. v. Food Bam Stores, Inc. (In re Bam Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").

23.     To that end, courts uniformly recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm.. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "encourage bidding ... maximize the value of the debtor's assets").

24.     The Debtors believe that the Bid Procedures will establish the parameters under which the value of the Transaction may be tested at the Auction. The Bid Procedures will increase the likelihood that the Debtors will receive the greatest possible consideration because they will ensure a competitive and fair bidding process.

25.     The Debtors also believe that the Bid Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best and highest offer reasonably

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 12**

DAL:787355.1

available for the Assets. The Bid Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a Transaction. The Debtors believe that the Bid Procedures will encourage bidding, that they are consistent with other procedures previously approved by courts in this and other districts and that the Bid Procedures are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

26.     Thus, the Bid Procedures are reasonable, appropriate and within the Debtors' sound business judgment under the circumstances because the Bid Procedures are designed to maximize the value to be received by the Debtors' estates.

**II.     Approval of the Proposed Sale Transaction**
        **Is Appropriate and in the Best Interests of the Estates**

27.     Section 363(b) of the Bankruptcy Code provides that a trustee (and by implication, a debtor in possession), after notice and a hearing, may sell property of the estate outside the ordinary course of business, 11 U.S.C. § 363(b), as long as it is a valid exercise of the debtor in possession's business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986)(for a "trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

28.     Section 363(f) of the Bankruptcy Code provides in part that a trustee may sell property of the estate outside the ordinary course of business free and clear of any other entity's interest in such property if such entity consents, such interest is in bona fide dispute, or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §§ 363(f)(2), (f)(4) and (f)(5).

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 13**

DAL:787355.1

29. Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of all liens, claims, interests and encumbrances with any such liens, claims, interests and encumbrances attaching to the proceeds of sale. 11 U.S.C. § 363(f). Sale of the Assets free and clear may proceed under sections 363(f)(2) and (f)(5) of the Bankruptcy Code, for the primary reasons that the DIP Lender has consented to the sale, and if the DIP Lender is not the Successful Bidder and, thus, the ultimate purchaser, it will have a lien on the proceeds of the sale. To the extent that there may be other liens on the Assets, the Debtors believe that such lienor(s) could be compelled in a legal or equitable proceeding to accept a money payment in lieu of their interest in the property, as authorized by Section 363(f)(5) of the Bankruptcy Code.

30. As noted above, the Debtors have been actively marketing the Assets, and the Bid Procedures Notice and this Motion will be served on the Contact Parties. In the Debtors' business judgment, the sale of the Assets is in the best interest of the estates. The Debtors believe that without the sale the Assets will be liquidated, there will not be sufficient funds remaining after the sale to pay the DIP Lender in full and there will be no recovery for unsecured creditors. The Purchase Agreement provides for payment of allowed administrative claims in full and a recovery for the unsecured creditors.

31. The Debtors respectfully request that this Court authorize the Debtors to sell their Assets, free and clear of any liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances in the Assets attaching to the proceeds of sale in the same order of priority as existed prior thereto, in accordance with the attached Bid Procedures.

32. The sale of the Assets in an expeditious fashion is essential. A delay in this process will only diminish recovery for the Debtors' respective creditors. The sale of the Assets is in the best

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 14**

DAL:787355.1

interests of the estates, and all parties-in-interest, and represents the reasonable exercise of the Debtors' business judgment. Therefore, the ten-day stay under Bankruptcy Rules 6004(h) and 6006(d) should be waived.

## NOTICE

33.     The Debtors will provide notice of this Motion to the top thirty (30) unsecured creditors of the Debtors on a consolidated basis, the Office of the United States Trustee, all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, all lien holders, the taxing authorities, and the Contact Parties. The Debtors respectfully submit that such notice is appropriate and that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) granting the relief requested herein and (ii) granting such other and further relief as may be just and proper.

Respectfully submitted this 10th day of January, 2011.

**ANDREWS KURTH LLP**

By: /s/ Monica S. Blacker
    Monica S. Blacker
    Texas State Bar No. 00796534
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:    (214) 659-4400
Facsimile:    (214) 659-4401
Email:    mblacker@akllp.com

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 15**

DAL:787355.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 10th day of January, 2011, she caused a true and correct copy of the foregoing document to be served upon the Office of the United States Trustee, 976 Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242, on all parties asserting a lien on the Debtors' assets and on the parties appearing on the attached Service List via first class United States mail, postage prepaid or via ECF.

/s/Monica S. Blacker
Monica S. Blacker

**EXPEDITED MOTION FOR ENTRY OF (A) AN ORDER APPROVING BID AND NOTICE PROCEDURES; AND (B) AN ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, OR SUCH OTHER PURCHASE AGREEMENT(S) BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) GRANTING RELATED RELIEF – PAGE 16**

DAL:787355.1

# EXHIBIT A

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (the "Agreement") is executed and delivered on this __ day of January, 2011, and is by and among BROADSTAR INVESTMENT COMPANY, LLC, a Connecticut limited liability company ("Buyer") and BROADSTAR WIND SYSTEMS GROUP, LLC, a Delaware limited liability company ("BWSG"), BROADSTAR DEVELOPMENTS LP, a Texas limited partnership ("Developments LP"), BROADSTAR DEVELOPMENTS MANAGEMENT LLC, a Texas limited liability company ("Developments Management"), BROADSTAR SYSTEMS, LP, a Delaware limited partnership ("Systems LP"), and BROADSTAR SYSTEMS MANAGEMENT, LLC, a Delaware limited liability company ("Systems Management"). Developments LP, Developments Management, Systems LP, and Systems Management, are sometimes individually referred to as a "Subsidiary Entity" and sometimes collectively referred to as the "Subsidiary Entities." BWSG and the Subsidiary Entities are sometimes collectively referred to as the "Sellers."

## RECITALS

A.     Each of the Sellers is the subject of a proceeding in bankruptcy (the "Bankruptcy Proceeding") as the result of a voluntary petition in bankruptcy filed by the Sellers with the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"); and

B.     The Sellers comprise a development stage distributed wind generation company(without production engineering capabilities) focused on the development of wind turbines for on-site electrical power generation for commercial, government and industrial buildings (the "Business"); and

C.     Buyer desires to purchase the assets of the Sellers used in connection with the Business and identified herein, except for certain excluded assets, and Seller desires to sell such assets to Buyer; and

D.     Buyer and Sellers wish to set forth the terms and conditions of the purchase herein.

NOW, THEREFORE, in consideration of the premises and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

## ARTICLE I
## DESCRIPTION OF ACQUIRED ASSETS

1.1     Description of Acquired Assets. Subject to and following the approval of the Bankruptcy Court, and upon the other terms and conditions set forth in this Agreement, and in consideration of the Purchase Price (as defined below), at the Closing as set forth in Section 3.1, the Sellers shall sell to Buyer (or to an assignee of Buyer) the following assets, properties and contractual rights (the "Acquired Assets"), free and clear of all encumbrances:

1.1.1     All patents, inventions, designs, specifications, blueprints, industrial designs, trade secrets, rights to use, secret processes, formulae, copyrights, trademarks, trade names, service

marks, and all applications, registrations, renewals and other rights relating to the foregoing (whether or not any registration or filing has been made with respect thereto) used in the Business, and all legal rights to require an assignment of patents or other intellectual property rights on the part of any employee or other person engaged in work for hire, including without limitation those items listed on <u>Schedule 1.1.1</u> hereto (the "<u>Intellectual Property Rights</u>");

      1.1.2    All tangible personal property owned by the Sellers and used in the Business including, without limitation, all fully or partially assembled wind turbines, any new, spare or replacement parts or subassemblies relating thereto or useable in building additional prototypes or production items, together with all tools, supplies, or inventories of any nature whatsoever ("<u>Tangible Property</u>");

      1.1.3    All Seller-owned manual and automated computer, billing and accounting systems and components thereof, and all other transferable software and transferable programs used or for use in the Business, including but not limited to such other items listed on <u>Schedule 1.1.3</u> (the "<u>Systems</u>");

      1.1.4    All office equipment and furniture used or for use in the Business and owned by any of the Sellers, including but not limited to those listed on <u>Schedule 1.1.4</u> (the "<u>Office Equipment</u>");

      1.1.5    All permits, licenses, franchises, consents and approvals of every kind necessary to operate the Business, as the same are more completely described on <u>Schedule 1.1.5</u> (the "<u>Permits</u>");

      1.1.6    All of the contractual rights of Seller relating to the operation of the Business that are identified on <u>Schedule 1.1.6</u> (the "<u>Assumed Contractual Rights</u>"); and

      1.1.7    All other property of any nature whatsoever relating to the Business other than the Excluded Assets as defined below.

      1.2    <u>Excluded Assets</u>.  The following assets are not being sold to Buyer pursuant to this Agreement (collectively, the "<u>Excluded Assets</u>"): any contractual rights not identified on Schedule 1.1.8, whether oral or in writing, and including any employment agreements or other obligations to pay compensation or any other form of remuneration.

      1.3    <u>No Assumption of Liabilities</u>.  Buyer shall not, by the execution and performance of this Agreement or otherwise (including under theories of successor liability), assume, become responsible for or incur any liability of any nature of any of the Sellers, except for the obligations to perform under any Assumed Contractual Rights that first arise after the Closing.

ARTICLE II
PURCHASE PRICE

      2.1    <u>Purchase Price</u>.  The purchase price for the Acquired Assets (the "<u>Purchase Price</u>") shall consist of:  (a) payment of all Administrative Expenses incurred in connection with the

Bankruptcy Proceeding and approved as such by the Bankruptcy Court not paid or payable from the cash or accounts receivable of the Sellers; (b) a credit bid of the Debtor in Possession financing and/or pre-petition secured financing advanced by the Buyer of not less than One Million Dollars; plus (c) the sum of Twenty Thousand Dollars to be used to pay pre-petition unsecured creditors. The Purchase Price, other than the credit bid amount, shall be payable in immediately available funds at the Closing.

## ARTICLE III
## CLOSING

3.1     Closing.  The closing (the "Closing") of the transactions contemplated hereby (the "Transactions") shall take place at 10:00 a.m. at the offices of the Sellers on a mutually convenient date not later than five (5) business days after the date on which this Agreement is approved by the Bankruptcy Court (the "Closing Date").

3.2     Deliveries by the Sellers.  At the Closing, the Sellers shall deliver to Buyer a duly executed General Conveyance, Assignment and Bill of Sale, specific Patent Assignments or similar instruments, separate assignments of the Assumed Contractual Rights, and such other separate instruments of sale, transfer or assignment, as the Buyer may reasonably request.

3.3     Deliveries by Buyer.  At the Closing, the Buyer shall deliver to the Sellers the cash portion of the Purchase Price Buyer, together with an Assumption of the Assumed Contractual Rights, and other documents or instruments as the Buyer may reasonably request.

3.4     Further Assurances.  From time to time on and after the Closing and without further consideration, and for so long as the particular Seller may remain in existence, the parties to this Agreement shall each deliver or cause to be delivered to the other parties, at such times and places as shall reasonably be requested, such additional instruments as any of the others may reasonably request for the purpose of carrying out this Agreement and the Transactions.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLERS

The Sellers severally represent and warrant to Buyer that:

4.1     Organization.  Each Seller is a limited liability company or a limited partnership, as the case may be, duly organized, validly existing and in good standing under the laws of its state of organization;

4.2     Power and Authority.  Each Seller has the full legal right, power and authority to enter into this Agreement and to consummate the Transactions, and all company action of each Seller and its respective owners necessary to approve the Transactions has been taken.

4.3     Enforceability.  Each Seller has duly executed and delivered this Agreement, and (assuming due authorization, execution and delivery by Buyer) this Agreement constitutes a legal,

valid and binding obligation of each Seller enforceable against each of them in accordance with its terms.

4.4    No Conflict.  The execution, delivery and performance of this Agreement by each Seller, and the consummation of the Transactions, do not and will not:  (a) violate, conflict with or result in the breach of any provision of any of the Sellers' respective articles of organization, certificates of formation, operating agreements, or limited partnership agreements; (b) conflict with or violate in any material respect any law or governmental order applicable to the Acquired Assets, the Business, any Seller or any of their respective assets, properties or businesses; or (c) conflict with, result in any breach of, constitute a default (or event which with the giving of notice or lapse of time would become a default) under, require any consent under, or give to any other person any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, or result in the creation of any encumbrance on any of the Acquired Assets or any properties of any Seller.

4.5    Governmental Consents and Approvals.  The execution, delivery and performance of this Agreement, and the consummation of the Transactions, by the Sellers do not and will not require any consent or action by, filing with or notification to, any governmental authority other than the approval of the Bankruptcy Court.

4.6    Intellectual Property Rights.  Schedule 1.1.1 sets forth all Intellectual Property Rights that Sellers own, use or license or in which any Seller has any interest.

4.7    Compliance with Law.  Sellers have conducted and continue to conduct the Business in material compliance with all laws, permits and governmental orders applicable to the Business

ARTICLE V
REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to each Seller that:

5.1    Organization.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Connecticut;

5.2    Power and Authority.  Buyer has the full legal right, power and authority to enter into this Agreement and to consummate the Transactions, and all company action of the Buyer and its Members necessary to approve the Transactions has been taken.

5.3    Enforceability.  Each Seller has duly executed and delivered this Agreement, and (assuming due authorization, execution and delivery by the Sellers) this Agreement constitutes a legal, valid and binding obligation of the Buyer enforceable against it in accordance with its terms.

5.4    No Conflict.  The execution, delivery and performance of this Agreement by the Buyer, and the consummation of the Transactions, do not and will not:  (a) violate, conflict with or result in the breach of any provision of any of the Buyer's articles of organization or operating agreement; (b) conflict with or violate in any material respect any law or governmental order applicable to the Buyer or any of its assets, properties or businesses; or (c) conflict with, result in any

breach of, constitute a default (or event which with the giving of notice or lapse of time would become a default) under, require any consent under, or give to any other person any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, or result in the creation of any encumbrance on any of the assets or any properties of the Buyer.

5.5     Governmental Consents and Approvals.  The execution, delivery and performance of this Agreement, and the consummation of the Transactions, by the Buyer do not and will not require any consent or action by, filing with or notification to, any governmental authority other than the approval of the Bankruptcy Court.

5.6     Compliance with Law.  Buyer has conducted its business activities in material compliance with all laws, permits and governmental orders.

ARTICLE VI
GENERAL PROVISIONS

6.1     Binding Effect; No Third Party Beneficiaries.  This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns.  Nothing in this Agreement is intended to or shall confer upon any other person, including any employee or former employee of any Seller, any legal or equitable right, benefit or remedy of any nature whatsoever, including any rights of employment for any specified period.

6.2     Amendment.  This Agreement may not be amended except by a written instrument executed by each party to this Agreement.

6.3     Entire Agreement.  This Agreement (together with the other agreements contemplated by this Agreement) and the related Bankruptcy Order is the final, complete and exclusive statement of the agreement among the parties with relation to the subject matter of this Agreement.  There are no oral representations, understandings or agreements covering the same subject matter as this Agreement.  This Agreement supersedes and cannot be varied, contradicted or supplemented by evidence of, any prior or contemporaneous discussions, correspondence, or oral or written agreements or arrangements of any kind.

6.4     Counterparts.  This Agreement may be executed in two or more original or facsimile counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

6.5     Notices.  All notices or other communications required or permitted under this Agreement shall be in writing and may be given by depositing the same in the United States mail, addressed to the party to be notified, postage prepaid and registered or certified with return receipt requested, by overnight courier, by facsimile with delivery verification or by delivering the same in person to such party, addressed as follows:

If to any Seller, addressed to them at:

c/o Monica Blacker, Esq. and John Quattrocchi, Esq.
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201


If to Buyer, addressed to it at:

BROADSTAR INVESTMENT COMPANY, LLC
10 Columbus Boulevard, 4th Floor
Hartford, CT 06106
Attn: John Pavia, Esq.

and a copy to:

Law Offices of John T. Del Negro, LLC
105 Court Street, Suite 304
New Haven, CT 06511-6957

Notice shall be deemed given and effective the day personally delivered or facsimiled with delivery verification, the day after being sent by overnight courier, subject to signature verification, and three business days after the deposit in the U.S. mail of a writing addressed and sent as provided above or when actually received, if earlier. Any party may change the address for notice by notifying the other parties of such change in accordance with this Section.

7.6    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas.

6.6    <u>Severability</u>. If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall, to the extent possible, be modified in such manner as to be valid, legal and enforceable but so as most nearly to retain the intent of the parties. If such modification is not possible, such provision shall be severed from this Agreement. In either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

6.7    <u>Construction</u>. The headings in this Agreement are inserted for convenience only, and shall not constitute a part of this Agreement or be used to construe or interpret any of its provisions. The parties have participated jointly in negotiating and drafting this Agreement. If a question of interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement. Any reference to any statute shall be deemed to refer to the statute, as amended, and to all rules and regulations promulgated thereunder, as amended,

unless the context requires otherwise. The word "include" or "including" means include or including, without limitation. The representations, warranties and covenants in this Agreement shall have independent significance. Accordingly, if any party has breached any representation, warranty or covenant contained in this Agreement in any respect, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) that the party has not breached shall not detract from or mitigate the fact the party is in breach of the first representation, warranty or covenant.

6.8     Expenses of Transaction; Reliance on Advisors.  Whether or not the Transactions are consummated: (a) Buyer will pay the fees, expenses and disbursements of Buyer and its representatives incurred in connection with this Agreement; and (b) Sellers will pay the fees, expenses and disbursements of Sellers and their respective representatives incurred in connection with this Agreement.

6.9     No Brokers.  Sellers represent and warrant to Buyer and Buyer represents to Sellers that the warranting party has had no dealings with any broker, agent or other Person so as to entitle such Person to a commission or fee in connection with the Transactions.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, Buyer and Sellers have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BroadStar Investment Company, LLC**

By_____
   James R. Barnes
   Its Manager, duly authorized

BroadStar Wind Systems Group, LLC

By_____
   Roy C. King
   Its President and CEO
   Duly authorized

| | |
|---|---|
| **BroadStar Developments, LP** | **BroadStar Systems, LP** |
| By BroadStar Developments Management LLC | By BroadStar Wind Systems Group, LLC |
| Its General Partner | Its General Partner |
| By BroadStar Group LLC | By_____ |
| Its Managing Member |    Roy C. King |
| |    Its President and CEO |
| By_____ |    Duly authorized |
|    Roy C. King | |
|    Its President and CEO | |
|    Duly authorized | |
| **BroadStar Developments Management LLC** | **BroadStar Wind Systems Group, LLC** |
| By BroadStar Group LLC | By_____ |
| Its Managing Member |    Roy C. King |
| |    Its President and CEO |
| By_____ |    Duly authorized |
|    Roy C. King | |
|    Its President and CEO | |
|    Duly authorized | |

## SCHEDULE 1.1.1

## Intellectual Property Rights

**Patented and Pending Applications for Broadstar Wind Systems Group (BSWSG) and Broadstar Developments, L.P. (BSDLP)**

| Name | Country | Assignee | Serial / Patent No. | Date | Filed Status |
|------|---------|----------|---------------------|------|--------------|
| Rotary Wing Aircraft | United States | BSDLP | 7370828 | 5/4/2006 | Patented |
| Wind Driven Power Generator | United States | BSDLP | 7365448 | 8/17/2006 | Patented |
| Wind Driven Power Generator with Movable Cam | United States | BSDLP | 12/110,100 | 4/25/2008 | Pending |
| Fluid Turbine Optimized for Power Generation | United States | BSWSG | 12/614,232 | 11/6/2009 | Pending |
| Fluid Turbine Featuring Phase-Adjusted Cam | United States | BSWSG | 12/637,498 | 12/14/2009 | Pending |
| Fluid Turbine Having Optimized Blade Pitch Profiles | United States | BSWSG | 12/954,886 | 11/28/2010 | Pending |
| Fluid Turbine Having Improved Cam-and-Follower Mechanism | United States | BSWSG | 12/954,889 | 11/28/2010 | Pending |
| Fluid Turbine Featuring Dynamically Phase-Adjustable Cam | United States | BSWSG | 12/954,893 | 11/28/2010 | Pending |
| Fluid Turbine Having Improved Blade Mounting Structure | United States | BSWSG | 12/954,895 | 11/28/2010 | Pending |
| Wind Driven Power Generator and Applications for Same | International | BSDLP | PCT/U52009/45851 | 6/1/2009 | Pending |
| Mobile Wind Turbine | International | BSDLP | PCT/U52009/58568 | 9/28/2009 | Pending |
| Fluid Turbine Optimized for Power Generation | International | BSDLP | PCT/U52010/02921 | 11/8/2010 | Pending |
| Rotary Wing Aircraft | Canada | BSDLP | 2607075 | 5/2/2006 | Pending |
| Rotary Wing Aircraft | Europe | BSDLP | 06 758 857.4 | 5/2/2006 | Pending |
| Wind Turbine | Argentina | BSDLP | 901 00654 | 2/26/2009 | Pending |
| Wind Turbine | Chile | BSDLP | 430-2009 | 2/25/2009 | Pending |
| Wind Turbine | Thailand | BSDLP | 901 000800 | 2/25/2009 | Pending |
| Wind Turbine | Taiwan | BSDLP | 981 06036 | 2/25/2009 | Pending |
| Wind Turbine | Europe | BSDLP | 971 5899.2 | 9/27/2010 | Pending |
| Wind Driven Power Generator | Australia | BSDLP | 2007285942 | 3/13/2009 | Pending |
| Wind Driven Power Generator | Brazil | BSDLP | 200900135 | 2/17/2009 | Pending |
| Wind Driven Power Generator | Canada | BSDLP | 2661137 | 2/17/2009 | Pending |
| Wind Driven Power Generator | China | BSDLP | 200780038173 | 4/13/2009 | Pending |
| Wind Driven Power Generator | Europe | BSDLP | 7840983.6 | 3/11/2009 | Pending |
| Wind Driven Power Generator | Hong Kong | BSDLP | 9111462.7 | 12/8/2009 | Pending |
| Wind Driven Power Generator | Indonesia | BSDLP | Wo200900412 | 2/17/2009 | Pending |
| Wind Driven Power Generator | India | BSDLP | 1678/DELNP/2009 | 3/13/2009 | Pending |
| Wind Driven Power Generator | Mexico | BSDLP | MX/a/2009/001757 | 2/16/2009 | Pending |
| Wind Driven Power Generator | Malaysia | BSDLP | P1 20090598 | 2/16/2009 | Pending |
| Wind Driven Power Generator | New Zealand | BSDLP | 575534 | 3/13/2009 | Pending |
| Wind Driven Power Generator | Singapore | BSDLP | 200901131-3 | 2/17/2009 | Pending |

# SCHEDULE 1.1.3

## Systems

[to be completed]

## __SCHEDULE 1.1.4__

## __Office Equipment__

-        All personal computers, laptops, printers, scanners, fax machines

-        All furniture and furnishings

-        All beepers, cell phones, PDAs.

# SCHEDULE 1.1.5

## Permits

[to be completed]

# SCHEDULE 1.1.6

## Assumed Contract Rights

- All rights under any wind studies

- All rights under any work-for-hire or similar agreements with any employees or consultants relating to the mandatory assignment of any improvements, product designs, product developments etc.

DAL:787355.1

# EXHIBIT B

Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| | § | |
| Debtors. | § | |

### BID PROCEDURES[5]

Set forth below are the bid procedures (the "Bid Procedures") to be employed by BroadStar Wind Systems Group, LLC, *et al.* (collectively, the "Debtors") with respect to the sale of the assets and operations (the "Assets") of the Debtors (the "Transaction"). It is contemplated that the Transaction will be implemented through a purchase agreement (the "Purchase Agreement") with BroadStar Investment Company, LLC (the "Purchaser"), subject to the receipt of higher and better bids according to these Bid Procedures.

| Important Dates |
|---|

- [_____]: Proposed date of Bid Procedures Hearing

- February 4, 2011 at 4:00 pm: Deadline to submit Bid to be considered for the Auction

- February 8, 2011 at 10:00 am: Proposed date of Auction

- February 9, 2011 Noon: Debtors to file notice of Successful Bidder

- February 9, 2011: Deadline to file and serve objections to relief requested at Sale Hearing

---

[5] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bid Procedures (the "Bid Procedures Motion")

| • February 11, 2011: | Proposed date of Sale Hearing |
|---|---|

### Approval of Bid Procedures

The Debtors shall request that the Court set a hearing (the "Bid Procedures Hearing") to occur on or before January 14, 2011 to approve, among other things, the Bid Procedures. Any party in interest that wishes to oppose the entry of an order (the "Bid Procedures Order") approving the Bid Procedures must file with the Court a written objection pursuant to applicable Bankruptcy Rules on or before 5:00 p.m. (prevailing Central Time) the day prior to the Bid Procedures Hearing (the "Bid Procedures Objection Deadline").

### Marketing Process

<u>Contact Parties</u>

The Debtors, in consultation with their investment banker Nutmeg Advisory Partners, LLC d/b/a VR Business Sales ("VR"), have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing Transaction to that of the Purchaser (a "Competing Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors and VR are already in the process of contacting the Contact Parties to explore their interest in pursuing a Competing Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a Transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a Transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an Information Package, comprising of a cover letter, and a copy of these Bid Procedures.

<u>Access to Diligence Materials</u>

A party who qualifies for access to the diligence materials (the "Diligence Materials") shall be a Preliminarily Interested Investor. All due diligence requests must be directed to VR at Nutmeg Advisory Partners, LLC d/b/a VR Business Sales, 941 Grand Avenue, 2/F, New Haven, CT 06511, Attn: Jeff Swiggett (Tel: 203-772-3773, Fax: 203-772-3713).

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

## Auction Qualification Process

To be eligible to participate in the Auction each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions:

(a)     Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of $100,000 to an interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(b)     Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Purchase Agreement. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "Competing Transaction Documents"). A Bid shall include a copy of the Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price). A Bid should propose a Competing Transaction involving substantially all of the Debtors' assets or operations. A Bid must propose a purchase price higher than the purchase price under the Purchase Agreement. The allocation of the purchase price in the Competing Transaction Documents will provide that the costs and expenses of engaging VR and the auction process will be paid from (i) first, the increase in purchase price from the Purchase Agreement; and (ii) second, to the extent the increase in purchase price is not sufficient to meet these costs and expenses, the Twenty Thousand and 00/100 ($20,000.00) Dollars to be used to pay pre-petition unsecured creditors.

(c)     Corporate Authority: Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(d)     Proof of Financial Ability to Perform: Written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction. Such information should include, *inter alia*, the following:

- contact names and numbers for verification of financing sources;

- evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

- the Bidder's current financial statements (audited if they exist); and

- any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the

written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e) <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(f) <u>Irrevocable</u>: A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid, such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

(g) <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtors must receive a Bid in writing, on or before 4:00 p.m. (Central Standard Time) on February 4, 2011 (the "<u>Bid Deadline</u>").

A bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a Qualified Bid, and such Bidder shall constitute a Qualified Bidder.

## Auction

If more than one Qualified Bid is received by the Bid Deadline (other than the Purchase Agreement), the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid. This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities, if any; (iii) the ability of the Qualified Bidder to close the proposed Transaction; (iv) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (v) any purchase price adjustments; (vi) the impact of the Transaction on any actual or potential litigation; and (vii) the net after-tax consideration to be received by the Debtors' estates (collectively, the "<u>Bid Assessment Criteria</u>"). If no Qualified Bid (other than the Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Central time) on February 8, 2011, at the offices of Debtors' counsel, Andrews Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201 or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. The Auction shall be conducted according to the following procedures:

(a) <u>The Debtors Shall Conduct the Auction</u>.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Purchase Agreement or, in the event a higher and better bid is received, such Qualified Bid (the "<u>Auction Baseline Bid</u>"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

(b) <u>Terms of Overbids</u>.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

<u>Additional Consideration</u>: Any Overbid's additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt, marketable securities or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim, in any combination.

<u>Remaining Terms are the Same as for Qualified Bids</u>: Except as modified in the Bid Procedures, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid. To the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

<u>Announcing Overbids</u>: The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

<u>Consideration of Overbids</u>: The Debtors reserve the right, in their reasonable business judgment to make one or more adjournments in the Auction to, among other things :facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient noncontingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

<u>Backup Bidder</u>.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date that is sixty (60) days after the date of the Auction (the "<u>Outside Backup Date</u>") or the closing of the transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will

be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The deposit of the Backup Bidder shall be held by the Debtors until the earlier of twenty-four (24) hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.

Additional Procedures.

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with the Bid Procedures.

Consent to Jurisdiction as Condition to Bidding.

The Purchaser, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid. The Debtors shall not consider any bids submitted after the conclusion of the Auction.

The Debtors shall not consider any bids submitted after the conclusion of the Auction.

## Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") on or before February 11, 2011, at which the Debtors will seek approval of the Transaction with the Successful Bidder. Objections to the sale of the Assets to the Successful Bidder or Backup Bidder must be filed and served so that they are actually received by the Debtors no later than 4:00 p.m. (prevailing Central time) on February 9, 2011.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful

Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of: (y) two (2) business days after the Assets have been sold pursuant to the closing of a sale approved by the Bankruptcy Court and (z) 60 days after conclusion of the Auction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

# EXHIBIT C

**EXHIBIT C - BID PROCEDURES ORDER – PAGE 1**

DAL:787355.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| Debtors. | § | |

**ORDER (A) APPROVING BID PROCEDURES; AND (B) APPROVING THE
FORM AND MANNER OF NOTICES THEREOF**

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors (collectively, the "<u>Debtors</u>")

for the entry of an order (the "<u>Order</u>") (a) approving Bid Procedures, and (b) approving the form and

manner of notices thereof; it appearing that the relief requested is in the best interests of the Debtors'

estates, their creditors and other parties in interest; the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the

**EXHIBIT C - BID PROCEDURES ORDER – PAGE 2**

DAL:787355.1

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS THAT:[6]

2.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 503 and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and (ii) Rules 2002(a)(2), 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      Notice of the Motion, has been given to: (i) to the top thirty (30) unsecured creditors of the Debtors on a consolidated basis, (ii) the Office of the United States Trustee, (iii) all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, (iv) all lien holders, (v) the taxing authorities, and (vi) the Contact Parties (collectively, the "Notice Parties").

5.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bid Procedures; and (ii) set the Sale Hearing and approve the manner of notice of the Motion and the Sale Hearing.

6.      The Bid Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

---

[6] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**EXHIBIT C - BID PROCEDURES ORDER – PAGE 3**
DAL:787355.1

**ORDERED THAT**:

The Motion is granted as provided herein.

1.      The Bid Procedures, substantially in the form attached to the Motion as <u>Exhibit "B"</u>, are hereby approved. The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

2.      The Purchaser is granted relief from the automatic stay pursuant to section 362 of the Bankruptcy Code for the limited and sole purpose of exercising its rights under those provision, including with respect to the Purchaser's termination of the Purchase Agreement.

3.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.      The Debtors shall publish the notice attached to the Motion as <u>Exhibit "D"</u> (the "<u>Bid Procedures Notice</u>"), once in the <u>Wall Street Journal</u> within five business days after entry of this Order.

5.      As further described in the Bid Procedures, the Debtors shall conduct the Auction at 10:00 a.m. on February 8, 2011, at the offices of Debtors' counsel, Andrews Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201 or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.

6.      The Sale Hearing will be conducted on February 11, 2011. The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder. The Sale Hearing may be continued from time to time without further .notice

**EXHIBIT C - BID PROCEDURES ORDER – PAGE 4**

DAL:787355.1

other than such announcement announced in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

7. Objections, if any, to the relief requested in the Motion relating to the Transaction must be in writing and filed with the Court no later than 4:00 p.m. (prevailing Central time) on the day before the Sale Hearing and serve such objection so that it is actually received by counsel for the Debtors, Andrews Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201.

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### # # # END OF ORDER # # #

**EXHIBIT C - BID PROCEDURES ORDER – PAGE 5**

DAL:787355.1

# EXHIBIT D

Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| | § | |
| Debtors. | § | |

## NOTICE OF BID PROCEDURE

**PLEASE TAKE NOTICE** that on January 11, 2011, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion [Docket No. [___]] (the "Bid Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Texas, Dallas Division (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on [_____], the Bankruptcy Court entered an order (the "Bid Procedures Order") approving Bid Procedures (the "Bid Procedures"), which set key dates, times and procedures related to the sale of substantially all of the Debtors' assets (the "Assets"). **All interested bidders should carefully read the Bid Procedures**. To the extent that there are any inconsistencies between the Bid Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have been and will continue to market the Assets in advance of the Auction. To be eligible to participate in the Auction, each Bid and each Bidder must be determined by the Debtors to comply with the conditions for a Qualified Bid set forth in the Bid Procedures. The deadline to submit a Qualified Bid is February 4, 2011 at 4:00 p.m. (prevailing Central time) (the "Bid Deadline"). To be considered, any Bid must comply with the requirements for a "Qualified Bid" set forth in the Bid Procedures.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures Order, an auction (the "Auction") will be conducted at the offices of Debtors' counsel, Andrews

Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201, or at another location as may be timely disclosed by the Debtors to all Qualified Bidders, on February 8, 2011, or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received.

   **PLEASE TAKE FURTHER NOTICE** that a hearing will be held to confirm the results of the Auction and approve the transactions contemplated in the Bid Procedures and Sale Motion to the Successful Bidder at the Auction (the "Sale Hearing") on February 11, 2011, or at such time thereafter as counsel may be heard. The Sale Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than such adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on Notice Parties and the entities who have filed objections to the Bid Procedures and Sale Motion, without further notice to other parties in interest. **Objections, if any, to the sale of the Assets to the Successful Bidder must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Central time) on February 10, 2011, and be served such that they are actually received by: (i) counsel for the Debtors, Andrews Kurth LLP, at 1717 Main Street, Suite 3700, Dallas, Texas 75201; and (ii) [INSERT OTHER ENTITIES RECEIVING NOTICE].**

   **PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict with this Notice. The Debtors encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and the Bid Procedures Order may be obtained (i) for a fee via PACER at www.pacer.gov/.

# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, *et al.*, | § | |
| | § | Jointly Administered |
| Debtors. | § | |

**ORDER (I) APPROVING A PURCHASE AGREEMENT BETWEEN THE
DEBTORS AND THE SUCCESSFUL BIDDER, (II) AUTHORIZING THE
SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES,
AND (III) GRANTING RELATED RELIEF**

Upon the Motion of BroadStar Wind Systems Group LLC, *et al.*, the above-captioned debtors

and debtors in possession (collectively, the "Debtors"), for Entry of an Order (I) Approving a

Purchase Agreement Between the Debtors and the Successful Bidder (the "Agreement"), (II)

Authorizing the Sale of all or Substantially all of the Assets Free and Clear of all Liens, Claims,

Interests and Encumbrances, and (III) Granting Related Relief (the "Motion"); and the Court having

jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this being a core proceeding

pursuant to 28 U.S.C. § 157 (b)(2); and good and sufficient notice of the Motion having been given and no other or further notice of the Motion being required, and after due deliberation and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:[7]**

<u>Jurisdiction, Final Order and Statutory Bases</u>

1.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

3.     The statutory bases for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

4.     This Court entered the Bid Procedures Order on [_____] [Docket No. [____]].

---

[7] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

<u>Notice of the Sale and Auction</u>

5.      Actual written notice of the Sale Hearing, the Auction, the Motion, the sale of the Assets and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested entities, including, but not limited to: (i) to the top thirty (30) unsecured creditors of the Debtors on a consolidated basis, (ii) the Office of the United States Trustee, (iii) all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, (iv) all lien holders, (v) the taxing authorities, and (vi) the Contact Parties (collectively, the "<u>Notice Parties</u>")

6.      The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the relief requested in the Motion relating to the Transaction in the <u>Wall Street Journal</u>.

7.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation, approval and authorization to serve the Bid Procedures Notice.

8.      The Bid Procedures Notice provided all interested parties with timely and proper notice of the Transaction, the Sale Hearing and the Auction.

9.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing and the Transaction has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing and the Transaction required by the Bid Procedures Order. The notices described above were good, sufficient and

appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing or the Transaction is required.

10.     The disclosures made by the Debtors concerning the Agreement, the Auction, the Transaction and the Sale Hearing were good, complete and adequate.

<u>Good Faith of the Successful Bidder</u>

11.     The Successful Bidder is not an "insider" of any of the Debtors, as that term is defined in section 101 (31) of the Bankruptcy Code.

12.     The Successful Bidder is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Successful Bidder recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Successful Bidder complied with the provisions in the Bid Procedures Order; (iii) the Successful Bidder agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (iv) all payments to be made by the Successful Bidder and other agreements or arrangements entered into by the Successful Bidder in connection with the Transaction have been disclosed; (v) the Successful Bidder has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Agreement was at arms-length and in good faith.

<u>Highest and Best Offer</u>

13.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed and conducted in a

noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.

14.     The Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

15.     The Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of these cases. No other entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Successful Bidder.

16.     Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

17.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Transaction.

<u>No Fraudulent Transfer</u>

18.     The consideration provided by the Successful Bidder pursuant to the Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

19.     The Successful Bidder is not a mere continuation of the Debtors or their estates and there is no continuity between the Successful Bidder and the Debtors. The Successful Bidder is not holding itself out to the public as a continuation of the Debtors. The Successful Bidder is not a

successor to the Debtors or their estates and the Transaction does not amount to a consolidation, merger or de facto merger of the Successful Bidder and the Debtors.

<u>Validity of Transfer</u>

20.     The Debtors have full corporate power and authority to execute and deliver the . Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

21.     The transfer of each of the Assets to the Successful Bidder will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest the Successful Bidder with all right, title and interest of the Debtors to the Assets free and clear of all Claims and Interests accruing, arising or relating thereto any time prior to the Closing Date, except for any permitted encumbrances and assumed liabilities (the "<u>Permitted Encumbrances</u>" and "<u>Assumed Liabilities</u>," respectively) under the Agreement.

<u>Section 363(f) Is Satisfied</u>

22.     The Successful Bidder would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Assets to the Successful Bidder were not free and clear of all Claims and Interests of any kind or nature whatsoever (except the Permitted Encumbrances and Assumed Liabilities), or if the Successful Bidder would, or in the future could, be liable for any of such Claims and Interests.

23.     The Debtors may sell the Assets free and clear of all Claims and Interests against the Debtors, their estates or any of the Assets (except for the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Claims and Interests against the Debtors, their

estates or any of the Assets who did not object, or who withdrew their objections, to the Transaction or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Claims and Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims and Interests, if any, in each instance against the Debtors, their estates or any of the Assets, attach to the cash proceeds of the Transaction ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

<u>Compelling Circumstances for an Immediate Sale</u>

24.     To maximize the value of the Assets and to reduce the amount of postpetition debtor-in possession financing borne by the Debtors, it is essential that the closing of the Transaction occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Transaction.

25.     Given all of the circumstances of the Chapter 11 Cases and the adequacy and fair value of the purchase price under the Agreement, the Transaction constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

26.     The consummation of the Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**Accordingly, it is hereby:**

ORDERED that the Motion is granted and approved, and that the Transaction contemplated thereby and by the Agreement is approved as set forth in this Order; and it is further

ORDERED that this Court's findings of fact and conclusions of law, set forth in the Bid Procedures Order, are incorporated herein by reference; and it is further

ORDERED that the Debtors shall be, and hereby are, authorized to sell its assets to the Successful Bidder pursuant to the terms set forth in the Agreement; and it is further

ORDERED that the Debtors be, and hereby are, authorized and the Debtors be, and they hereby are, directed to execute any and all appropriate documentation in connection with and in furtherance of the Transaction, and to do all such further acts and things as may be reasonably necessary to complete the transactions and consummate the same; and it is further

ORDERED that the sale of the Assets be, and are hereby deemed to be, free and clear of any and all liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances to attach to the proceeds of sale in the same order of priority as existed prior thereto; and it is further

ORDERED that any party who has filed a lien on the Assets shall be required to file a release of lien, claim or encumbrance of any other such document as may be required under applicable law to cancel and remove from the public record any such lien, encumbrance or claim; and it is further

ORDERED that, to the extent the DIP Lender is not the Successful Bidder and/or has not previously been paid in full, the Debtors shall pay the proceeds of the sale of Assets to the DIP Lender; and it is further

ORDERED that, the Purchaser is not a successor to the Debtor, and that the sale of the Assets pursuant to this Order does not constitute a de facto merger or consolidation of the Debtors and

Purchaser, or a continuation of the Debtors' business, and the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Assets; and it is further

ORDERED that, notwithstanding the provisions of Bankruptcy Rule 6004(g), this Order shall be effective immediately; and it is further

ORDERED that the Court shall retain exclusive jurisdiction over any dispute arising with respect to the relief granted herein, including, but not limited to, the enforcement of the terms and conditions of this Order.

# # # END OF ORDER # # #