SCOTT D. JOHANNESSEN
LAW OFFICES OF SCOTT D. JOHANNESSEN
CA SBN 128841; TN BPRN 26767
3200 West End Avenue, Suite 500
Nashville, TN 37203
Telephone: 877.863.5400
Facsimile: 877.863.5401
E-Mail: scott@sdjnet.com

*Attorney for Etcetera, LLC*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BROADSTAR WIND SYSTEMS | § | Case No. 10-33373-BJH |
| GROUP LLC, et al., | § | |
| | § | Jointly Administered |
| Debtors. | § | |

**ETCETERA, LLC'S**
**OBJECTIONS TO SALE**
**OF INTELLECTUAL PROPERTY**

**THE PROPERTY DEBTORS COLLECTIVELY SEEK TO SELL VIS-À-VIS THEIR PENDING MOTION TO SELL INCLUDES, AMONG OTHER THINGS, THE FOLLOWING INTELLECTUAL PROPERTY:**

**US PATENT NO. 7,370,828 ("PATENT 828")**

**US PATENT NO. 7,365,448 ("PATENT 448")**

**FOR THE REASONS HEREINAFTER SET FORTH, AS AN OWNER OF PATENT 828 AND PATENT 448 ETCETERA OBJECTS TO THIS COURT APPROVING AND/OR SANCTIONING THE SALE, TRANSFER, ENCUMBRANCE AND/OR HYPOTHECATION OF EITHER OR BOTH OF THE ABOVE-REFERENCED PATENTS. HOWEVER, ETCETERA DOES NOT OBJECT TO THE SALE OR TRANSFER OF DEBTORS' OTHER PROPERTY UNRELATED TO THE ABOVE-REFERENCED PATENTS.**

Pursuant to this Court's January 21, 2011 Order (Docket No. 268), Etcetera, LLC ("Etcetera"), a Tennessee limited liability company, hereby opposes Debtors' January 10, 2011 Motion to Sell (Docket No. 254) and submits the following Objections to Sale of Intellectual Property vis-à-vis the scheduled February 22, 2011 Sale Hearing as follows:

# I

## ETCETERA'S OWNERSHIP INTERESTS IN
## PATENT 448 AND PATENT 828 HAVE NOT BEEN REFUTED

1. These bankruptcy proceedings commenced on May 11, 2010. Since then, Etcetera has filed significant evidentiary support for its ownership interests in the Stephens Patents. See, e.g., Docket Nos. 224, 179, 29, 33, 34, 38.[1] The Stephens Patents, along with Patent 366, were assigned to Etcetera in September 2009. Docket No. 224, pp. 67-73. Debtors improperly and prematurely seek to obtain this Court's permission to sell the Stephens Patents. RJN 000522-535, 531/schedule 1.1.1.

2. This Court and all parties in interest, time and again, have been made aware of Etcetera's ownership claims to the Stephens Patents. Further, no party in interest, including Debtors, have objected herein to Etcetera's ownership claims. All Debtors have admitted to not having any ownership interest in the Stephens Patents (see section II below). Clearly, contrary "arguments and statements of counsel" often proffered to the Court by Debtors' counsel during the course of these proceedings as "evidence" are not evidence at all and cannot be properly recognized as such. *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261 (5th Cir. 1994).

---

[1] Thomas Stephens ("Stephens") is the originator and inventor of the Stephens Patents: US Patent No. 7,137,366 ("Patent 366"), Request for Judicial Notice ("RJN") 000536-000554, 000609, 000778, 000829-000847; US Patent No. 7,370,828 ("Patent 828"), RJN 000555-000567, 000611, 000781, 000849-000861; and US Patent No. 7,365,448 ("Patent 448"), RJN 000568-000579, 000613, 000784, 000863-000874. The Stephens Patents are duly registered with and appear in the official records of the United States Patent and Trademark Office (the "USPTO"). Patent 366 was filed with the USPTO on September 10, 2004. Patent 828 was filed with the USPTO on May 4, 2005. Patent 448 was filed with the USPTO on August 17, 2006. RJN 000605. The Stephens Patents were assigned to Etcetera in 2009. RJN Exhibit 60, 000765-000771,

3. On December 10, 2010 Debtors[2] filed their first Motion to Sell ("Motion #1"). Docket Nos. 232, 234. On January 3, 2011 Etcetera filed its opposition to Motion #1. Docket No. 248. On January 21, 2011 the Court entered its Order denying Motion #1. Docket No. 269.

4. In an effort to avoid any unnecessary redundancy in responding to Debtors' present and second Motion to Sell, which is fundamentally the same as Motion #1, Etcetera respectfully requests that this Court take judicial notice of their October 4, 2010, November 28, 2010 and January 3, 2011 patent ownership claims, the entireties of which are incorporated herein by this reference. Fed. R. Evid. 201; Docket Nos. 179, 224 and 248, respectively.

II

### DEBTORS CANNOT AND SHOULD NOT BE ALLOWED
### TO SELL INTELLECTUAL PROPERTY THEY ADMIT THEY DO NOT OWN

5. Roy King ("King") is Debtors' President and Chief Executive Officer. RJN 000002, 4, 22, 23, 32, 41, 50, 59, 68, 77, 86, 97, 98, 116, 117, 126, 135, 144, 153, 162, 171, 180, 191, 192, 210, 211, 220, 229, 238, 247, 256, 265, 274, 285, 286, 304, 305, 314, 323, 332, 341, 350, 359, 368, 379, 380, 400, 401, 412, 422, 432, 442, 452, 464, 475, 485, 502, 513.

6. No fewer than *forty-five (45) times* during the course of these proceedings King filed with this Court, under penalty of perjury and with controlling owner Jim Barnes' knowledge and approval, sworn declarations stating that none of the Debtors owned any of the Stephens Patents. RJN 000014/item 22, 27/item 21, 36/item 21, 45/item 21, 54/item 21, 63/item 21, 72/item 21, 81/item 21, 90/item 21, 108/item 22, 121/item 21, 130/item 21, 139/item 21, 148/item 21, 157/item 21, 166/item 21, 175/item 21, 184/item 21, 202/item 22, 215/item 21, 224/item 21, 233/item 21, 242/item 21, 251/item 21, 260/item 21,

---

[2] As used herein, the following entity abbreviations apply: BroadStar Wind Systems Group LLC ("BWSG"), BroadStar Developments LP ("BD"), BroadStar Developments Management LLC ("BDM"), BroadStar Wind Systems Management LLC ("BWSM"), and BroadStar Wind Systems LP ("BWS"). These five entities are sometimes collectively referred to herein as "Debtors." Although related, all Debtors are separate and distinct entities under the eyes of the law. *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (applying traditional corporate law in a patent case, the Federal Circuit explained that where a business has set up related corporations as separate legal entities the business "must take the benefits with the burdens."). Consequently, the entities "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure." *Id.*

269/item 21, 278/item 21, 296/item 22, 309/item 21, 318/item 21, 327/item 21, 336/item 21, 345/item 21, 354/item 21, 363/item 21, 372/item 21, 389/item 22, 406/item 21, 417/item 21, 427/item 21, 437/item 21, 447/item 21, 459/item 21, 470/item 21, 480/item 21.

7. In *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir.1941), the Court of Appeals for the Fifth Circuit stated, "judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."

8. For purposes of judicial admissions and admitted facts, the Court may rely not only on matters contained or referred to in the pleadings, but may also rely on "facts ... contained in materials of which the court may take judicial notice." *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *accord, e.g., In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1981). This is consistent with the general rule that a party is bound by the admissions in his pleadings. See *State Farm Mutual Automobile Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968); *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir.1956). See also, *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F.Supp. 1246, 1250-51 (E.D.Mo.1976), aff'd 561 F.2d 1275 (8th Cir.1977); *Consolidated Rail Corp. v. Providence & Worcester Co.*, 540 F.Supp. 1210, 1220 (D.Dela.1982); *Giles v. St. Paul Fire & Marine Insurance Co.*, 405 F.Supp. 719, 725 n. 2 (N.D.Ala.1975).

9. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999). "Because the doctrine is intended to protect the judicial system, *rather than the litigants,* detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). **"*Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a***

***bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."*** *Id., emphasis added*.

10. Not until November 9, 2010, did any BroadStar entity disclose to the Bankruptcy Court any claimed ownership interest in any intellectual property, and even then the claimed ownership interest is in the most generic and nondescript terms (i.e., "Various patents/trademarks on wind turbine components"). None of the Stephens Patents are identified. Docket No. 211. BroadStar and any and all entities purporting to act on its behalf are bound by their judicial admissions of no ownership interest in or to any of the Stephens Patents, are judicially estopped from claiming any ownership interest in or to any of the Stephens Patents, and have waived any purported right to make any such claim at the present time.

11. Filing a false sworn declaration is a crime. Filing one isolated and inaccurate declaration with this Court under penalty of perjury could possibly be construed or spun by Debtors as a "mistake." But not 45 such declarations over an eight-month period. Taking King at his word, Debtors do not own any patents and, therefore, the Stephens Patents cannot be subject to the Motion to Sell.

### III

**DEBTORS CANNOT AND SHOULD NOT BE ALLOWED
TO SELL THE STEPHENS PATENTS, THE OWNERSHIP
OF WHICH IS SUBJECT TO A PENDING APPEAL**

12. As this Court is aware, Stephens and BWSG were in District Court trial on November 29-30, 2010 on the issue of patent ownership. Etcetera was never a party to the underlying District Court complaint and was never a party to the District Court trial. Up through the conclusion of the District Court trial, no Debtor other than BWSG was ever a party to the underlying District Court complaint or ever a party to the District Court trial.

13. On December 8, 2010 the District Court determined that BWSG, the sole plaintiff, did not have standing to bring a claim for patent ownership against Stephens. RJN 000950-955. After discovery closed, after the presentation of evidence at trial, and after the trial concluded BWSG moved to

add BD as a party plaintiff since BD had the only plausible claim to any ownership interest in the Stephens Patents. The District Court granted BWSG's motion.

14. On December 20, 2010 the District Court entered judgment in favor of BWSG and BD and against Stephens on the issue of patent ownership. RJN 000514-515.

15. On January 3, 2011 Stephens filed a notice of appeal regarding the District Court judgment concerning BWSG's Declaratory Judgment Act patent ownership claims (28 U.S.C. § 2201). RJN 000516-521.

16. Under the doctrine of res judicata, or "claim preclusion," "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). Res judicata bars a claim if four elements are met: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007).

17. Insofar as the District Court judgment is concerned, the patent ownership claims of BWSG and BD remain undecided. The appeal of the District Court judgment is pending and BWSG and BD's ownership claims to the Stephens Patents vis-à-vis Stephens are, to say the least, in a state of legal flux. In any event, the District Court judgment has no preclusive effect where Etcetera's patent ownership rights are concerned.

# IV

## DEBTORS CANNOT AND SHOULD NOT BE ALLOWED TO SELL THE STEPHENS PATENTS IN VIOLATION OF THIS COURT'S AUTOMATIC STAYS

18. Not only has Etcetera relied on the sworn admissions of Debtors' top executives (i.e., Barnes and King) as it monitored these bankruptcy proceedings, but Etcetera also has relied on the efficacy and soundness of the two section 362 automatic stays imposed on BWSG and BD in the Chapter 11 and Chapter 7 cases pending before this Court when Etcetera made procedural decisions herein. Two of these decisions concerned and were informed by the May 11 and October 29, 2010 automatic stays and the parameters of the motions for relief relating thereto.

19. Etcetera has standing to assert violations of the automatic stays. *See*, e.g., *United States v. Miller*, No. Civ. A. 5:02-CV-0168-C, 2003 WL 23109906 (N.D.Tex. Dec. 22, 2003); *Houston Pipeline Company LP v. Bank of America*, 213 S.W.3d 418 (August 24, 2006).

20. On May 11, 2010 Debtors filed for Chapter 11 bankruptcy protection. Docket Nos. 1, 2. Upon the filing of the petition an automatic stay went into effect pursuant to section 362 of the Bankruptcy Code. 11 U.S.C. § 362(a).

21. On May 19, 2010 Debtors filed a motion seeking relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(d) (the "First Motion for Relief"). Docket No. 40. Specifically, Debtors sought relief to pursue the claims against Stephens then pending in the District Court (the "Litigation"). The Litigation then pending in the District Court involved only one plaintiff (i.e., BWSG) against two defendants (i.e., Stephens and TGS Capital). Relating to patents, the Litigation then pending in the District Court addressed BWSG's DJA claim for patent ownership against Stephens. No other plaintiff asserting any other patent ownership claim was a party to the Litigation when Debtors filed their First Motion for Relief.

22. On October 29, 2010 Stephens filed for Chapter 7 bankruptcy protection in the case styled *In re Thomas Glenn Stephens*, U.S. Bankruptcy Court, Northern District of Texas (Dallas

Division), Case No. 10-37619-BJH-7 (the "Chapter 7 Case"). Chapter 7 Case, Docket No. 1. Upon the filing of the petition in the Chapter 7 Case an automatic stay went into effect pursuant to section 362 of the Bankruptcy Code. 11 U.S.C. § 362(a).

23. On November 2, 2010 Debtors filed a second motion seeking relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(d) (the "Second Motion for Relief"). Chapter 7 Case, Docket No. 14. As with their First Motion for Relief, Debtors again sought relief to pursue the Litigation against Stephens then pending in the District Court. As it did when Debtors filed their First Motion for Relief, the Litigation then pending in the District Court when Debtors filed their Second Motion for Relief still involved only one plaintiff (i.e., BWSG) against two defendants (i.e., Stephens and TGS Capital). As it did when Debtors filed their First Motion for Relief, the Litigation then pending in the District Court when Debtors filed their Second Motion for Relief still addressed BWSG's DJA claim for patent ownership against Stephens. No other plaintiff asserting any other patent ownership claim was a party to the Litigation when Debtors filed their Second Motion for Relief.

24. Section 362(a) defines the scope of the automatic stay by listing acts that are stayed by the commencement of a bankruptcy case. All judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed. Subsection (b) of the statute enumerates specific exceptions to the automatic stay rule. See 11 U.S.C. § 362(b). None of the exceptions apply here.

25. The scope of the automatic stay is broad. *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). "All proceedings are stayed, including . . . judicial proceedings. Proceeding in this sense encompasses civil actions. . . ." *Id.* The stay of section 362 is "automatic" because it is triggered as against all entities upon the filing of a bankruptcy petition, irrespective of whether the parties to the proceedings stayed are aware that a petition has been filed. *See NLT Computer Services v. Capital Computer Systems*, 755 F.2d 1253, 1258 (6th Cir. 1985); *In re Koresko*, 91 Bankr. 689, 701 (Bankr. E.D. Pa. 1988); *In re Boston Business Machines*, 87 Bankr. 867, 870

(Bankr. E.D. Pa. 1988). Because the automatic stay serves the interests of both debtors and creditors, it may not be waived and its scope may not be limited by a debtor. *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir. 1986).

26. Whether a specific judicial proceeding falls within the scope of the automatic stay must be determined by looking at the proceeding "at its inception." *St. Croix*, 682 F.2d at 449. "That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." *Id*. Thus, the dispositive question is whether a proceeding was "originally brought against the debtor." *Id*.; *see also Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64-5 (2d Cir. 1986).

27. In *Halmar Robicon Group, Inc. v. Toshiba Int'l Corp.*, the Federal Circuit held that "since a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding' . . . to include any pleading that asserts a claim on which relief is sought." The *Halmar* court held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit.

28. Section 362(a)(3) stays "any act to obtain possession of . . . or to exercise control over property of the estate." 11 U.S.C.S. § 362(a)(3). The stay under subsection (a)(3) applies to "any action, whether against the debtor or third-parties, to obtain possession or to exercise control over property of the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986); *see also Marroquin v. D & N Funding, Inc.*, 943 S.W.2d 112, 115 (Tex. App. – Corpus Christi 1997) (holding stay was intact against nondebtor third party for action that sought to evict debtor and nondebtor from property of the estate); *Audio Data Corp. v. Monus*, 789 S.W.2d 281, 286 (Tex. App. – Dallas 1990) (holding that stay under 362(a)(3) is applicable to all entities of "any act to obtain possession of . . . or to exercise control over property of the estate"), quoting 11 U.S.C.S. § 362(a)(3).

29. Further, "[a] declaratory judgment action against a debtor is an 'act to . . . exercise control over property of the estate', 11 U.S.C.S. § 362(a)(3), insofar as it seeks to affect . . . estate property." *Harbison-Walker Refractories Co. v. Ace Prop. & Casualty Ins. Co.*, 303 B.R. 753, 760 (Bankr. W.D. Penn. 2004), vacated in part & modified on other grounds, 2004 WL 555418 (Feb. 3, 2004). Thus, "[a]ny action in which the judgment may diminish" an asset of the bankruptcy estate "is unquestionably subject to a stay under this subsection." *A.H. Robins*, 788 F.2d at 1001, citing *In re Johns Manville Corp.*, 33 B.R. 254, 261 (Bankr. S.D.N.Y. 1983)).

30. Bankruptcy courts apply section 362(a)(3) in light of the "Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly situated creditors." *Audio Data*, 789 S.W.2d 281 at 286; see *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (5th Cir. 2003) (stating, "automatic stay . . . serves the salutory purpose of deterring creditors from jockeying for advantage" and is thus "designed to forfend against the disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings"). Specifically, "[t]he stay [must insure] that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *A.H. Robins Co. v. Piccinin*, 788 F.2d at 998, quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976).

31. Further, "[a]ll proceedings in a single case are not lumped together for purposes of automatic stay analysis. . . . Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992).

32. Etcetera did not oppose the First or the Second Motion for Relief filed by Debtors. Etcetera did not oppose either Motion for Relief for very supportable and justifiable reasons. When both

Motions for Relief were filed Etcetera rightfully believed, and its belief was supported by the Bankruptcy and District Court records, BWSG's District Court complaint and amended complaint, and Debtors' own sworn admissions, that the DJA portion of the Litigation did not involve any plaintiff but BWSG, did not involve any defendant but Stephens, and did not involve any patent ownership claim but BWSG's DJA claim. It was very clear at the time of both Motions for Relief that BWSG was suing a party for ownership of something that was not owned by either it or the party it was suing so there was no reason for Etcetera or anyone else to oppose the Motions for Relief. Other than BWSG, no other party in the District Court litigation filed a possible claim for ownership of the Stephens Patents. And again, throughout these Bankruptcy Court proceedings Debtors consistently provided sworn declarations and represented to this Court and all creditors, including Etcetera, that they did not own any patents.

33. BWSG was destined to lose the patent ownership trial since it never owned the patents upon which its DJA patent ownership claim was based and since the wrong plaintiff was suing the wrong defendant for the wrong reasons. BWSG's counsel knew about this procedural defect but did nothing before or during trial to remedy this fatal procedural error or to seek relief from this Court to add a new party plaintiff and a new affirmative claim to its District Court complaint, i.e., the Litigation Debtors themselves defined as the parameter of the Motions for Relief. In fact, not until *after* the patent ownership trial concluded and *after* Judge Furgeson suggested that the wrong plaintiff was in the case did BSWG do anything to remedy the procedural error. By that time it was too late. The new plaintiff, BD, never obtained relief from the Bankruptcy Court to join the District Court case as a party plaintiff and pursue an independent claim against Stephens for patent ownership.

34. The rules governing automatic stays require that multiple claim and multiple party litigation be "disaggregated" to determine exactly what claims and what parties are permitted to proceed once they obtain relief from the Bankruptcy Court. Only plaintiff BWSG was pursuing a patent ownership claim against defendant Stephens when BWSG filed its complaint in February 2010. Only plaintiff BWSG was pursuing a patent ownership claim against defendant Stephens when BWSG filed its

amended complaint in April 2010. Only plaintiff BWSG was pursuing a patent ownership claim against defendant Stephens when Debtors filed their First Motion for Relief in May 2010. Only plaintiff BWSG was pursuing a patent ownership claim against defendant Stephens when Debtors filed their Second Motion for Relief in November 2010. From the time BWSG filed its complaint in February 2010 through the conclusion of the trial in the District Court case in November 2010 all Debtors herein filed thirty-five (35) sworn affidavits under penalty of perjury claiming no ownership of any patent. Not until December 2010, after the conclusion of the November 2010 trial, did any other party plaintiff have a pending claim against Stephens for patent ownership. But that plaintiff, BD, and its claim was added after trial and that plaintiff, BD, never obtained Bankruptcy Court relief from the automatic stays to file any claim against Stephens. BD violated the automatic stays in both this case and the Chapter 7 Case.

35. The District Court exceeded its jurisdiction by, among other things, entering a Declaratory Judgment in BD's favor. *See Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986), quoting *In re Holtkamp*, 669 F.2d 505 (7th Cir. 1982) (holding that judicial acts and proceedings in violation of the automatic stay are void *ab initio* is consistent with the stay's function of "enabling the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'"). For these and other reasons the District Court's December 20, 2010 DJA Judgment has been appealed to the Fifth Circuit Court of Appeals.

36. Absent relief from the automatic stays, BD's judicial actions and proceedings against Stephens regarding ownership of the Stephens Patents are void *ab initio*. *Kalb v. Feuerstein*, 308 U.S. 433, 438-40, 60 S. Ct. 343, 346, 84 L. Ed. 370 ("the action of the . . . Court was not merely erroneous but was beyond its power, void, and subject to collateral attack"); *see also In re Ward*, 837 F.2d 124, 126 (3d Cir. 1988). This includes the District Court's Judgment in favor of BD and against Stephens concerning ownership of the Stephens Patents, which Judgment has been appealed and over which the District Court

no longer has jurisdiction. *Marrese v. American Academy of Ortho. Surgeons*, 470 U.S. 373, 379 (1985).

37. Since the Bankruptcy Court with jurisdiction over Debtors' Chapter 11 case and Stephens' Chapter 7 case never granted BD relief from the automatic stays, triggered on May 11, 2010 and October 29, 2010, respectively, to allow BD to pursue an independent patent ownership claim as a party plaintiff against defendant Stephens in the District Court case, the District Court had no authority to continue the proceedings in BD's DJA patent ownership claim against Stephens. Therefore, the District Court's actions in violation of the Chapter 11 and Chapter 7 stays are void *ab initio*. The District Court likely will need to vacate its Judgment to the extent it has adjudicated BD's DJA claim for patent ownership against Stephens during the pendency of Stephens' bankruptcy.

V

**CONCLUSION**

Etcetera has ownership rights to Patent 448 and Patent 828. Debtors are seeking to sell these patents to the exclusion of Etcetera's ownership rights. Throughout the course of these proceedings Debtors have repeatedly admitted, under penalty of perjury, to not having any ownership interest in Patent 448 or Patent 828. Further, a sale of Patent 448 and Patent 828 pending the appeal of a judgment encompassing Debtors' entitlement to any claim of ownership would be premature. Such actions would also be in violation of the 11 U.S.C. § 362 automatic stays.

Etcetera respectfully requests that Debtors' Motion to Sell be denied as to Patent 448 and Patent 828 and that Patent 448 and Patent 828 be excepted from any sale of Debtors' assets.

Dated: February 21, 2011                                    Respectfully submitted,


                                                            By: _____
                                                               SCOTT D. JOHANNESSEN
                                                               TN BPRN 26767; CA SBN 128841
                                                               3200 West End Avenue, Suite 500
                                                               Nashville, TN 37203
                                                               Telephone:   877.863.5400
                                                               Facsimile:   877.863.5401
                                                               E-Mail:      scott@sdjnet.com

                                                               *Attorney for Etcetera, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that, on February 21, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF/PACER system. The Court will send notification of such filings to all CM/ECF participants, unless otherwise indicated as follows:

| Service on: | Service by: | Capacity: |
|---|---|---|
| Monica S. Blacker<br>Andrews Kurth LLP<br>1717 Main Street, Suite 3700<br>Dallas, TX 75201<br>Telephone: 214.659.4400<br>Facsimile: 214.659.4401<br>E-Mail: mblacker@akllp.com | ECF | Attorneys for Debtors |
| Mary Frances Durham<br>United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242-1496<br>Telephone: 214.767.1241<br>Facsimile: 214.767.8971<br>E-Mail: maryfrances.durham@usdoj.gov | ECF | U.S. Trustee |
| Thomas V. Malorzo<br>P.O. Box 59283<br>Dallas, TX 75229<br>E-Mail: patents@prodigy.net | ECF | Attorney for Thomas Stephens |
| Andrew Gould<br>Wick Phillips LLP<br>2100 Ross Avenue, Suite 950<br>Dallas, TX 75201<br>E-Mail: andrew.gould@wickphillips.com | E-Mail | Attorneys for Debtors |

_____
SCOTT D. JOHANNESSEN